**Millcreek MANOR, Petitioner,**

v.

**DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Nov. 6, 2001.

Decided April 18, 2002.

Kathleen Herzog Larkin, Paoli, for petitioner.

Edward G. Cherry, Harrisburg, for respondent.

Daniel K. Natirboff, Harrisburg, for amicus curiae, St. Anne Home and Loving Care Nursing Center, Inc.

BEFORE: McGINLEY, J.,[1] and PELLEGRINI, J., and KELLEY, Senior Judge.[2]

OPINION BY Senior Judge KELLEY.

Millcreek Manor (Millcreek) petitions for review of a decision of the order of the Bureau of Hearings and Appeals (Bureau) of the Department of Public Welfare (DPW) to deny Millcreek's appeal from a decision of DPW's Bureau of Long Term Care Programs (LTC Bureau). The LTC Bureau denied Millcreek's request to add Medical Assistance (MA) beds to its existing MA certified facility.[3] We vacate the order of the Bureau and remand this case with the instruction that the Bureau conduct a de novo hearing.

Millcreek operates a nursing facility in Erie, Pennsylvania and is enrolled in the MA Program as a provider of nursing facilities. The MA program is authorized under the Public Welfare Code, Act of June 13, 1967, P.L. 31, as amended, 62 P.S. §§ 101–1503, and is administered in accordance with Title XIX of the Social

Security Act, 42 U.S.C. §§ 1396–1396(q), and related regulations. DPW is the state agency responsible for administering the MA Program, including determining the need for additional certified MA beds. DPW is required by federal law to adopt methods and standards that may be necessary to safeguard against unnecessary utilization of services under the MA Program and to assure that MA payments are consistent with efficiency, economy and quality of services. Section 1902(30)(A) of the Social Security Act, 42 U.S.C. § 1396a(30)(A).

Prior to December 1996, DPW relied upon the Certificate of Need (CON) process to comply with these federally prescribed standards. On December 18, 1996, the "sun set" on the CON process by legislative fiat.[4] However, DPW's obligations to safeguard the MA Program remained. In furtherance of that responsibility, DPW issued a series of policy statements, which culminated in the Statement of Policy (SOP)[5] at issue in this appeal, announcing how DPW intends to exercise its discretionary authority as set forth in the regulations. The SOP advised that DPW, pursuant to its discretionary authority under 55 Pa.Code § 1101.77(b)(1),[6] will terminate the enroll-

---

1. This case was heard by Senior Judge Rodgers prior to his death. As a result of his passing, Judge McGinley was substituted for Senior Judge Rodgers as a panel member.

2. The decision in this case was reached prior to the date when Judge Kelley assumed the status of senior judge on January 1, 2002.

3. In addition to the briefs submitted by Millcreek and DPW, amicus briefs were submitted by St. Anne Home and Loving Care Nursing Center, Inc. in support of Millcreek's position and by the Consumer Subcommittee of the Pennsylvania Medical Assistance Advisory Committee in support of the legality of DPW's statement of policy.

4. Chapter 7 and all other provisions of the Health Care Facilities Act (HCFA), Act of July 19, 1979, P.L. 130, as amended, 35 P.S. §§ 448.701–448.712, relating to the CON process terminated by legislative intent on December 18, 1996. Section 904.1 of the HCFA, added by the Act of December 18, 1992, P.L. 1602, 35 P.S. § 448.904a.

5. Pennsylvania Bulletin, vol. 28, no. 2, pp. 138–147 (January 10, 1998), Reproduced Record (R.R.) at 472a–481a.

6. Section 1101.77(b)(1) provides:
 (b) Departmental termination of the provider's enrollment and participation.
 (1) The Department may terminate the enrollment and direct and indirect partic-

ment of nursing facility providers that expand their existing MA certified bed capacity. R.R. at 473a. The SOP also stated that DPW would consider exceptions on a case-by-case basis, pursuant to guidelines published at 55 Pa.Code § 1187.21a. R.R. at 475a. The guidelines provide that DPW will grant an exception, if DPW determines that the provider has demonstrated that an increase in the number of MA beds is in DPW's best interest. R.R. at 476a.

In December 1997, Millcreek had 33 certified MA beds. Millcreek sought to relocate and expand its facility and requested DPW to re-certify its existing MA beds and to certify 18 additional MA beds. Millcreek submitted an application, known as an "exception request," to the LTC Bureau. The LTC Bureau granted Millcreek permission to relocate its existing 33 certified MA beds. R.R. at 555a–556a. By decision dated June 30, 1998,[7] the LTC Bureau denied Millcreek's request to expand its certified bed capacity based upon a determination that there was a surplus of beds in Millcreek's primary service area (Erie County) and that more appropriate and less costly options were available to meet the needs of the MA population. R.R. at 553a–554a. The LTC Bureau advised Millcreek that should Millcreek add additional beds to its facility, Millcreek's participation in the MA Program would be terminated. *Id.* The LTC Bureau further advised Millcreek of its right to appeal the decision. *Id.*

 Millcreek appealed the decision to DPW's administrative tribunal, the Bureau. In the notice of appeal, Millcreek raised multiple issues, including whether the SOP is an unpromulgated regulation, whether the SOP is inconsistent with and in violation of state and federal law, whether the denial of Millcreek's exception request is supported by substantial evidence, whether DPW's application of the SOP is arbitrary and capricious, and whether the SOP is an attempt to reestablish the CON program which was terminated by legislative fiat. The Bureau's hearing officer limited the issue before it to whether or not the LTC Bureau abused its discretion by refusing Millcreek's exception request. Following an administrative hearing, the Bureau's hearing officer issued a 28 page adjudication recommending that Millcreek's appeal be denied. On May 10, 2001, the Bureau adopted the recommendation in its entirety. Millcreek now seeks judicial review of that determination.[8] Millcreek presents the following issues for our review:

1. Is DPW's SOP illegal and inconsistent with federal law?

2. Did the Bureau err by finding that DPW's SOP is not an unpromulgated regulation?

3. Did the proceeding before the Bureau violate Administrative Agency Law [9] and Millcreek's right to due process?

4. Are the numerous factual findings of the Bureau supported by substantial evidence?

---

ipation of, and suspend payments to, any provider upon 30 days advance notice for the convenience or best interest of the Department.

7. The LTC Bureau treated Millcreek's application as two separate requests.

8. Our scope of review is limited to a determination of whether constitutional rights have been violated, an error of law was committed, or necessary findings of fact were unsupported by substantial evidence. Section 704 of Administrative Agency Law, 2 Pa.C.S. § 704; *Bird v. Department of Public Welfare,* 731 A.2d 660 (Pa.Cmwlth.1999).

9. 2 Pa.C.S. §§ 501–508, 701–704.

5. Did DPW err by applying a criteria to Millcreek's application which is not disclosed in the SOP?

6. Did the Bureau err by excluding relevant and probative evidence?

7. Does DPW's preferential treatment of CON holders violate equal protection?

### Conflict with Federal Law

Millcreek contends that the SOP is illegal and inconsistent with federal law and that the hearing officer erred by not addressing this issue. We agree that the hearing officer should have addressed this issue.

■ Administrative agencies have ancillary jurisdiction to rule upon the validity of their own regulations. *Arsenal Coal Company v. Department of Environmental Resources*, 505 Pa. 198, 477 A.2d 1333 (1984); *Croner, Inc., v. Department of Environmental Resources*, 139 Pa.Cmwlth. 43, 589 A.2d 1183 (1991); *Harleysville Mutual Ins. Co. v. Catastrophic Loss Trust Fund*, 101 Pa.Cmwlth. 215, 515 A.2d 1039 (1986). This jurisdiction logically extends to a review of an agency's guidelines, policy statements and resolutions as well as the agency's application of them. *See Stinson v. United States*, 508 U.S. 36, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993). An agency's interpretation of its own rules and regulations is entitled to great weight unless it is clearly erroneous or in conflict with its enabling legislation. *Milewski v. Commonwealth*, 93 Pa.Cmwlth. 120, 500 A.2d 1261 (1985), *petition for allowance of appeal denied*, 515 Pa. 569, 526 A.2d 1191 (1987). While an agency is competent to pass upon the validity of its own rules and regulations, an administrative agency is not competent to pass upon questions of the validity or constitutionality of the enabling legislation. *Croner; St. Joe Minerals Corp. v. Goddard*, 14 Pa.Cmwlth. 624, 324 A.2d 800, 802 (1974).

■ A state's participation in the MA Program is voluntary, but for a state to receive federal funds, its approved plan must meet all the requirements of the federal statute and implementing regulations. *Montgomery County Geriatric & Rehabilitation Center v. Department of Public Welfare*, 75 Pa.Cmwlth. 248, 462 A.2d 325 (1983). States are given considerable latitude in formulating the terms of their own MA plans. *Addis v. Whitburn*, 153 F.3d 836 (7thCir.1998), *cert. denied*, 527 U.S. 1021, 119 S.Ct. 2365, 144 L.Ed.2d 770 (1999). However, this discretion is not unlimited and is qualified by the requirement that a participating state fully comply with the federal statutes and regulations governing the Medicaid program. *Id.*

Federal law provides that a State plan for medical assistance must comply with the provisions of Section 1902 of the Social Security Act, 42 U.S.C. § 1396a. For example, a state plan must "provide such safeguards as may be necessary to assure that eligibility for care and services under the plan will be determined, and such care and services will be provided, in a manner consistent with simplicity of administration and the *best interests of the recipients.*" Section 1902(a)(19) of the Social Security Act, 42 U.S.C. § 1396a(a)(19) (emphasis added). A state plan must also:

provide that (A) any individual eligible for medical assistance (including drugs) may obtain such assistance from any institution, agency, community pharmacy, or person, qualified to perform the service or services required (including an organization which provides such services, or arranges for their availability, on a prepayment basis), who undertakes to provide him such services . . . .

Section 1902(a)(23) of the Social Security Act, 42 U.S.C. § 1396a(a)(23). A state plan must:

provide such methods and procedures relating to the utilization of, and the payment for, care and services available under the plan (including but not limited to utilization review plans as provided for in section 1396b(i)(4) of this title) as may be necessary to safeguard against unnecessary utilization of such care and services and to assure that payments are consistent with efficiency, economy, and quality of care and are sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area.

Section 1902(a)(30)(A) of the Social Security Act, 42 U.S.C. § 1396a(a)(30). Federal regulations set forth standards for denial, termination, and nonrenewal of Medicaid provider agreements. "If the Medicaid agency has adequate documentation *showing good cause,* it may refuse to execute an agreement, or may cancel an agreement, with a certified facility." 42 C.F.R. § 442.12(d) (emphasis added).

■ In the case before us, Millcreek challenged the SOP on the grounds that the SOP is illegal and inconsistent with the above provisions of federal law. R.R. at 3a–8a. Despite raising these claims, the hearing officer precluded Millcreek from challenging the validity of the SOP. As the hearing officer had jurisdiction to consider and rule upon the validity of the SOP, we conclude that the hearing officer erred by failing to address whether the SOP is inconsistent with the federal enabling legislation.

### Unpromulgated Regulation

Millcreek also contends that the Bureau committed an error of law by finding that

the SOP is not an unpromulgated regulation when Millcreek was denied the opportunity to challenge the SOP. We agree.

As stated above, administrative agencies have ancillary jurisdiction to rule on the validity of their own statements of policies. Such jurisdiction encompasses a determination of whether the policy is in conflict with enabling legislation as well as whether the policy is an unpromulgated regulation.

■ In determining whether a statement of policy is a regulation with the force and effect of law, the Pennsylvania Supreme Court has held that a properly adopted substantive rule establishes a standard of conduct which has the force of law, whereas a general statement of policy does not establish a binding norm, but merely serves as an announcement to the public of a policy which the agency hopes to implement in future rulemaking or adjudications. *Pennsylvania Human Relations Commission v. Norristown Area School District,* 473 Pa. 334, 374 A.2d 671 (1977). To ascertain whether a binding norm is established, the reviewing tribunal must consider the provision's plain language, the manner in which it has been implemented by the agency and whether the section restricts the agency's discretion. *Id.; R.M. v. Pennsylvania Housing Finance Agency of the Commonwealth,* 740 A.2d 302 (Pa.Cmwlth.1999), *petition for allowance of appeal denied,* 563 Pa. 669, 759 A.2d 390 (2000).

In the case before us, Millcreek challenged the validity of the SOP on the grounds that the SOP was an unpromulgated regulation. At the hearing, Millcreek sought to establish a factual record with regard to whether the SOP was a binding norm that should have been promulgated as a regulation.[10] R.R. at 210a.

**10.** Ordinarily, the determination of whether a statement of policy is an unpromulgated regu-

The hearing officer ruled that Millcreek could not address the issue of the validity of the SOP or present any evidence on this issue. R.R. at 210a–211a. The hearing officer stated:

that's not something the [Bureau] has any power to decide whether or not something that has been promulgated and issued as a policy statement whether or not it is—we're not going to look at that question.

R.R. at 210a. The hearing officer limited the hearing to two issues: 1) Did DPW abuse its discretion when it found that there was no need for MA beds in Erie County; and 2) Did DPW abuse its discretion when it found that there were less costly, more efficient alternatives to the expansion of nursing home beds. R.R. at 195a.

At the conclusion of the hearing, the hearing officer permitted the parties to brief only four issues. In addition to the above listed abuse of discretion issues, the hearing officer directed that the parties brief the issues of who had the burden of proof and what was the proper scope of the hearing before the hearing officer. Despite this limitation, DPW's brief addressed the validity of the SOP. R.R. at 967a–1026a. In response, Millcreek requested that this portion of DPW's brief be stricken or that Millcreek be granted an opportunity to brief the validity of the SOP and present evidence. R.R. at 1027a–1031a. By order dated November 14, 2000, the hearing officer granted Millcreek's request to strike the section of DPW's brief addressing the SOP's validity stating that "The hearing official stated on the record those issues the parties could argue in the briefs. The issue of the validity of the policy statement was not one of

the listed issues." R.R. at 1055a. By second order bearing the same date, the hearing officer denied Millcreek's request to open the record stating that since the validity issue was stricken, there was "no need to re-open the record to accept evidence concerning the validity of the policy statement." R.R. at 1056a.

Despite these rulings, when the hearing officer issued her Recommendation in May 2001, the issue of the SOP's validity was addressed. The hearing officer accepted DPW's contention that the SOP was a valid statement of policy and not a binding norm. The hearing officer stated:

Appellant could have produced evidence that the Statement of Policy should have been promulgated but was unable to do so. The Department produced documentation to show that the Statement of Policy was not an unpromulgated regulation, as contended, and provided the decision of the legislative committee which found the Statement of Policy was not a binding norm or an unpromulgated regulation. Furthermore, it is the opinion of the undersigned that no evidence was offered by either party to suggest the provisions of the Statement of Policy were followed stringently or strictly. To the contrary, the Department's witnesses provided compelling evidence that all requests were handled separately and all relevant and pertinent evidence was considered by the Department's staff.

Hearing Officer's Recommendation, p. 22–23.

■ The hearing officer, in reaching this decision, considered a decision of the legislative committee which found that the SOP was not a binding norm. However,

lation is a question of law, which does not necessitate the establishment of a factual rec-

ord.

this documentation was never introduced into evidence and is not part of the record certified to this Court. The fact that the hearing officer excluded the issue from consideration and then addressed the issue without affording Millcreek an opportunity to be heard or to present or rebut evidence constitutes a flagrant disregard of the law and a violation of Millcreek's due process rights. *See Soja v. Pennsylvania State Police,* 500 Pa. 188, 455 A.2d 613 (1982) (due process requires a reasonable opportunity to meet and rebut evidence used by an administrative agency.). In this regard, we conclude that the hearing officer has erred.

### Due Process

Millcreek further contends that the Bureau did not comply with Administrative Agency Law and violated Millcreek's due process rights by failing to provide Millcreek with a *de novo* hearing. We agree.

■■■ The guarantee of due process, in Pennsylvania jurisprudence, emanates from a number of provisions of the Declaration of Rights, particularly Article I, Sections 1, 9, and 11 of the Pennsylvania Constitution. *Lawson v. Pennsylvania Department of Public Welfare,* 744 A.2d 804 (Pa.Cmwlth.2000). The constitutional right to due process is fully applicable in proceedings before administrative tribunals. *Soja; Lawson.* The fundamental requisites of due process are adequate notice and an opportunity to be heard. *Lawson;* Section 504 of Administrative Agency Law, 2 Pa.C.S. § 504 ("No adjudication of a Commonwealth Agency shall be valid as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard.").[11]

Under DPW's MA regulations, a nursing facility that has been either denied an MA Provider Agreement or renewal of the agreement or whose agreement has been terminated in whole or in part by the Department prior to its expiration date, has the right to a *full evidentiary hearing* before a hearing officer to contest the action. 55 Pa.Code § 1181.101(a)(4)(i) (emphasis added). Such matters are heard by hearing officers who are required to adjudicate issues in compliance with Administrative Agency Law. Section 501 of Administrative Agency Law, 2 Pa.C.S. § 501.

■■ In conducting a full evidentiary hearing, an administrative agency should determine all the issues which are properly before it and adequately raised. The adjudication must include all findings necessary to resolve the issues raised by the evidence and which are relevant to a decision. *Page's Department Store v. Velardi,* 464 Pa. 276, 346 A.2d 556 (1975). Administrative Agency Law provides that administrative agencies shall not be bound by technical rules of evidence at agency hearings, and all relevant evidence of reasonably probative value may be received. Section 505 of Administrative Agency Law, 2 Pa.C.S. § 505. Reasonable examination and cross-examination shall be permitted. *Id.* All testimony shall be stenographically recorded and a full and complete record shall be kept of the proceedings. Section 504 of Administrative Agency Law.

---

11. While Section 504 mandates that a party receive an opportunity to be heard, that opportunity does not require the equivalent of an evidentiary hearing in every case. *United Healthcare Benefits Trust v. Insurance Commissioner of Pennsylvania,* 152 Pa.Cmwlth. 549, 620 A.2d 81 (1993). This Court has held that where no factual issues are in dispute, no evidentiary hearing is required under 2 Pa. C.S. § 504. *Id.* Where there are no disputed facts, the motion proceedings, including briefs and arguments by both parties, provide ample opportunity for the parties to be heard and the Administrative Agency Law requires no more. *Id.*

In conducting a full evidentiary hearing, the administrative hearing officer is conducting a *de novo* review of the matter. "De novo" review entails, as the term suggests, full consideration of the case anew as if it was not heard before and no decision had been previously rendered. *Commonwealth v. Krut*, 311 Pa.Super. 64, 457 A.2d 114 (1983). The reviewing body is in effect substituted for the prior decision-maker and redecides the case. *D'Arciprete v. D'Arciprete*, 323 Pa.Super. 430, 470 A.2d 995, 996 (1984). In conducting a hearing *de novo*, the tribunal hears the matter in its original, not appellate, jurisdiction.[12] *In re Involuntary Commitment of Barbour*, 733 A.2d 1286, 1288 (Pa.Super.1999).

Recently, this Court examined due process and what is meant by *de novo* hearing. *Lawson*, 744 A.2d at 804–808. In *Lawson*, the petitioner, a disabled person, was receiving basic and ancillary care services from a provider contracted by DPW to provide attendant care services to eligible persons. *Id.* In response to allegations that petitioner had verbally abused the provider's attendants, the provider conducted an investigation and then proposed to terminate services. Petitioner filed an appeal with DPW. *Id.* The appeal was heard by a Bureau hearing officer, which affirmed the provider's decision to terminate services. *Id.* On appeal to this Court, the petitioner argued that the hearing officer denied him due process by failing to conduct a *de novo* examination of the legal and factual issues raised in his appeal. *Id.*

This Court opined that "[b]efore a state agency may make an adjudicatory determination depriving an individual of a state protected interest, the agency must provide a hearing before an impartial adjudicator to conduct a *de novo* examination of all the factual and legal issues." *Id.* at 807. While a hearing was conducted and an extensive record developed in the matter, this Court held that the hearing officer failed to conduct a *de novo* review of Petitioner's appeal as the hearing officer gave improper deference to the investigation and conclusions of the provider in two ways. *Id.*

First, the hearing officer applied a substantial evidence test to the evidence before it. *Id.* This was an appellate standard of review and "not a standard of evidence applied by a fact finder to determinations of whether a burden of proof has been satisfied." *Id.* at 807 (quoting *Samuel J. Lansberry, Inc. v. Pennsylvania Public Utility Commission*, 134 Pa.Cmwlth. 218, 578 A.2d 600, 602 (1990)). The substantial evidence standard did not apply to the proceeding before the hearing officer because the hearing officer was to weigh the evidence and substitute her judgment for that of the initial fact finder. *Lawson.*

Second, the hearing officer reviewed the provider's investigation and conclusions for an "abuse of discretion" or an "arbitrary and capricious action." *Id.* at 807. In doing so, the hearing officer was acting in an appellate capacity and improperly deferred to the investigation conducted by the provider, when the hearing officer should have made her own findings of fact, credibility determinations and conclusions of law. *Id.* As a result of these errors, this Court vacated the order of DPW and re-

---

12. The difference between *de novo* review and appellate review is significant. Under *de novo* review, the reviewing tribunal conducts an independent fact-finding proceeding in which new evidence is taken and all issues are determined anew. Under appellate review, the reviewing tribunal examines the record to determine whether the agency's findings are reasonably supported by substantial evidence; the administrative order being reviewed carries a presumption of validity.

manded the matter to DPW for purposes of conducting a *de novo* hearing. *Id.*

■ In the case before us, Millcreek was entitled to a *de novo* hearing on the factual and legal issues raised in its exception request and in its notice of appeal. Although Millcreek raised cogent issues regarding the validity of the SOP, whether the SOP created a binding norm, and whether the SOP was applied in a fair and consistent manner, the hearing officer limited Millcreek's challenge to the discrete issue of whether the LTC Bureau abused is discretion by denying Millcreek's exception request. In doing so, the hearing officer erred in two regards.

First, by reviewing DPW's actions for an abuse of discretion, the hearing officer was clearly conducting an appellate review of DPW's actions rather than acting as an independent fact finder in a *de novo* proceeding. In conducting a *de novo* review, the hearing officer of the Bureau, as the reviewing tribunal, is in effect substituted for the LTC Bureau, the prior decision-maker, and must re-decide the case. The issue before the hearing officer is not whether the LTC Bureau abused its discretion in denying Millcreek's exception request, but whether, from the evidence before the hearing officer, Millcreek's exception request should be denied.

Second, by failing to address the issues raised by Millcreek and by precluding Millcreek from presenting evidence on the issues raised, the hearing officer has not only effectively denied Millcreek a meaningful opportunity to be heard, but has also precluded this Court from conducting meaningful appellate review. While we recognize that administrative tribunals need not address every issue raised by the parties,[13] the issues raised by Millcreek were fundamental to the entire proceeding. The hearing officer could not reach the issue of whether Millcreek's exception request should be denied until the validity of the SOP was first examined. As stated above, the Bureau hearing officer is competent to resolve such issues of whether the agency's own statement of policy is in compliance with state and federal enabling legislation and whether the SOP is an unpromulgated regulation. For these reasons, we conclude that the hearing officer's failure to conduct a *de novo* review in this matter constitutes reversible error.

Accordingly, the order of the Bureau is vacated, and this matter is remanded to the Bureau for a *de novo* hearing and the issuance of a proper adjudication which fully addresses the legal and factual issues raised by Millcreek.[14]

### ORDER

AND NOW, this *18th* day of *April,* 2002, the order of the Bureau of Hearings and Appeals of the Department of Public Welfare, at No. 61–99–034, dated May 10, 2001, is vacated and this matter is remanded to the Bureau for a *de novo* hearing and the issuance of a proper adjudication which fully addresses the legal and factual issues raised by Millcreek Manor.

Jurisdiction relinquished.

---

**13.** *Wheeling & Lake Erie Railway Co. v. Public Utility Commission,* 778 A.2d 785 (Pa. Cmwlth.2001), *petition for allowance of appeal denied,* 567 Pa. 769, 790 A.2d 1021 (2001); *University of Pennsylvania v. Public Utility Commission,* 86 Pa.Cmwlth. 410, 485 A.2d 1217 (1984) (agency is not required to consider, expressly and at length, each and every contention raised by the parties).

**14.** In light of this determination, we need not address the remaining issues raised by Millcreek in this appeal.