CHIRO–MED REVIEW COMPANY,
Petitioner

v.

BUREAU OF WORKERS'
COMPENSATION,
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 24, 2005.
Decided July 14, 2005.

Timothy E. Gilsbach, Harrisburg, for petitioner.

Martin C. Cunningham, Harrisburg, for respondent.

BEFORE: FRIEDMAN, Judge, LEAVITT, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

Chiro–Med Review Company (Chiro–Med) petitions for review of an order issued by a Hearing Officer of the Department of Labor and Industry (Department) which denied Chiro–Med's appeal of the Bureau of Workers' Compensation, Health Care Services Review Division's (Bureau) decision to revoke its authorization to perform utilization reviews. We vacate the decision of the Hearing Officer and remand this case for the reasons set for the below.

Chiro–Med is a Utilization Review Organization (URO), which is an organization authorized by the Bureau to determine the reasonableness and necessity of medical treatment administered to people with work-related injuries. Pursuant to 34 Pa. Code § 127.653(a), the "[a]pproval of an applicant URO or PRO will be at the discretion of the Bureau." After this initial approval, a URO must apply for reauthorization to continue operating as a URO. Chiro–Med had received approval from the Bureau to operate as a URO and had also been granted reauthorization to operate as a URO for the period of August 1, 2002 to August 1, 2004, subject to its compliance with the Medical Cost Containment Rules and Regulations (Cost Containment Regulations) set forth in 34 Pa.Code §§ 127.1–127.755. By letter dated August 19, 2003, the Bureau informed Chiro–Med that it had information suggesting that Chiro–Med was not acting in accordance with the Cost Containment Regulations and that, therefore, it was

suspending the assignment of new reviews to Chiro–Med for sixty days pending the outcome of an investigation.[1] By letter dated October 2, 2003 from Eileen K. Wunsch, the Chief of the Health Care Services Review Division, the Bureau revoked Chiro–Med's authorization to operate as a URO based on its violation of several sections of the Cost Containment Regulations. The Bureau took this action pursuant to 34 Pa.Code § 127.669, which provides that:

(a) Upon investigation and following a conference with the Chief of the Medical Cost Containment Division, if the Bureau determines that a URO or PRO has violated the requirements of the act or this chapter, it may revoke the authorization of the URO or PRO to perform review functions under the act. Revocation of a URO or PRO's authority to perform reviews will be in writing and will advise the URO or PRO of its appeal rights.

(b) A URO or PRO whose authorization to perform reviews under the act has been revoked by the Bureau shall have the right to appeal the revocation within 30 days of the receipt of the Bureau's initial determination in accordance with the hearing process set forth in § 127.670 (relating to hearings).

In its October 2, 2003 letter, the Bureau noted the following violations: 1) Chiro–Med's office was closed in violation of 34 Pa.Code § 127.657, which requires URO offices to be open from 9:00 AM to 5:00 PM, Monday through Friday, except for legal holidays, 2) Chiro–Med violated 34 Pa.Code §§ 127.659, 127.663 and 127.664 by not having policies and procedures in

effect to ensure the confidentiality of medical records, nor did it have documented criteria, standards and guidelines for the conduct of reviews to insure that the URO and its reviewers comply with Subchapter C of the Cost Containment Regulations, which sets forth the scope of reviews and the duties of the URO, 3) Chiro–Med submitted six determinations in violation of 34 Pa.Code § 127.652 by failing to submit Qualification of Reviewer forms and 4) Chiro–Med failed to notify the Bureau of a fee increase that it charged for reviews in violation of 34 Pa.Code § 127.652.

Chiro–Med filed an appeal and a hearing was held before a Bureau Hearing Officer on March 16, 2004 as required by 34 Pa. Code § 127.670, which provides that:

(a) The Director of the Bureau will assign appeals to decisions regarding a URO and PRO's authority to review medical treatment to *a hearing officer who will schedule a de novo hearing on the appeal from the initial decision.* The URO/PRO will receive reasonable notice of the hearing date, time and place.

(b) The hearing will be conducted in a manner to provide the URO/PRO and the Bureau the opportunity to be heard. The hearing officer will not be bound by strict rules of evidence. All relevant evidence of reasonably probative value may be received into evidence. Reasonable examination and cross-examination of witnesses will be permitted.

(c) Testimony will be recorded and a full record kept of the proceeding. The Bureau and the URO/PRO will be provided

---

1. 34 Pa.Code § 127.688 provides that:
   If the Bureau obtains information suggesting that a URO or PRO is not acting in accordance with the requirements of the act or this chapter, the Bureau may temporarily suspend the assignment of new reviews to the URO or PRO pending the outcome of an investigation. The suspension period may not exceed 60 days. The URO or PRO shall have the right to confer with the Chief of Medical Cost Containment Division.

the opportunity to submit briefs addressing issues raised.

(d) The hearing officer will issue a written adjudication within 90 days following the close of the record. The decision will include all relevant findings and conclusions, and state the rationale for the decision. The decision will be served upon the URO/PRO, the Bureau and counsel of record. The decision will include a notification to the URO/PRO and the Bureau of further appeal rights to the Commonwealth Court.

(e) The URO/PRO or the Bureau, aggrieved by a hearing officer's adjudication, may file a further appeal to Commonwealth Court.

(emphasis added). At the hearing, the parties introduced numerous exhibits and presented several witnesses, including Linda Pagnotti, R.N., an employee in the Bureau's Medical Treatment Review Section, Maryann McCarthy, R.N., the manager of the Bureau's Medical Review Section and L. Gayle McCall, the Office Manager for a chiropractic office which is located in the same office suite as Chiro–Med. The Hearing Officer made the following pertinent Findings of Fact:

51. Having observed the witnesses and after reviewing all the testimony and supporting documentation in this matter, this Hearing Officer finds the testimony of the three witnesses to be fairly consistent. However, this Hearing Officer finds that Ms. Pagnotti and Ms. McCarthy were credible and adopts their testimony over that of Ms. McCall where they conflict, unless otherwise specifically noted within this Decision. In rendering this finding, the hearing officer finds that the testimony of Ms. Pagnotti and Ms. McCarthy is consistent with the documentation presented.

52. This Hearing Officer finds that Chiro–Med has violated Regulations during the period of August 1, 2002 to October 2, 2003 as follows:

a. Chiro–Med submitted six determinations in May and June of 2003 by reviewers that were not . . . on Chiro–Med's panel of reviewers. Chiro–Med failed to report a change in the list of reviewers to the Bureau within 30 days of the change in violation of Regulation 127.660 and 127.652.

b. Chiro–Med was not open for business on August 15, 2003 in violation of Regulation 127.657.

c. Though this hearing officer finds that any changes in the fee schedule were motivated by principles of fairness and reasonableness, nevertheless, Chiro–Med's failure to notify the Bureau of a deviation in its fee schedule violated Regulation 127.652.

53. This Hearing Officer finds that the Bureau's revocation of Chiro–Med's authorization was based upon the Bureau's review of Chiro–Med's performance of its responsibilities as a URO during the authorization period, and as such, was consistent with the Regulations found in section 127.656 (relating to general qualifications) and 127.669 (relating to revocation of authorization).

In the Discussion section of his decision, the Hearing Officer stated that:

This Hearing Officer is impressed that the actual reviews produced by Chiro–Med were timely, performed by reviewers with proper qualifications, and were in accordance with the rules and regulations. This Hearing Officer is further impressed by the fact that Chiro–Med remedied many of the Bureau's concerns and violations before the revocation of its authorization. For example, the Bureau had a legitimate concern with Chiro–Med's failure to secure the files separate from the chiropractic practice within the suite (though it did

not rise to a violation of the Regulations) and Chiro–Med proceeded to lock the door. Chiro–Med was in clear violation of the Regulations by failing to notify the Bureau of a change in its panel of reviewers, but ultimately did provide the Bureau with the proper documentation. **Nevertheless, Chiro–Med has a high burden to carry in this appeal, namely to establish that the Bureau abused its discretion in revoking their authorization.** This Hearing Officer finds that Chiro–Med did violate several of these Medical Cost Containment Regulations. The Bureau appropriately utilizes these Regulations as the standard to judge the performance of UROs. Accordingly, **this Hearing Officer finds that the Bureau did not abuse its discretion in revoking the authorization from Chiro–Med.**

(emphasis added). Accordingly, the Hearing Officer denied and dismissed Chiro–Med's appeal. Chiro–Med's appeal to this Court followed.[2]

On appeal, Chiro–Med argues that: 1) the Act does not give the Department the Authority to promulgate regulations regarding UROs, 2) the regulations violate Article II, § 1 of the Pennsylvania Constitution because the Act fails to provide any standards, 3) the regulations do not give the Chief of the Health Care Services Review Division the authority to revoke the authorization to perform reviews, 4) the Hearing Officer improperly placed upon Chiro–Med the burden of proving that the Bureau abused its discretion in revoking its authorization to perform reviews, 5) the Bureau abused its discretion in revoking Chiro–Med's authorization when it is undisputed that all of its reviews were timely and performed according to the regula-

tions, 6) revocation of Chiro–Med's authorization is manifestly unreasonable and 7) Chiro–Med's constitutional rights were violated because the Bureau initially, and incorrectly, informed it that the six utilization reviews at issue where it is alleged that Chiro–Med failed to submit Qualification of Reviewer forms occurred in May and June of 2002 when, as revealed at the hearing, these reviews in fact occurred in May and June of 2003. Specifically, Chiro–Med argues that its constitutional rights were violated because, due to this error, it was not given fair notice of its alleged violations of the Cost Containment Regulations.

First, we address Chiro–Med's argument that the Act does not give the Department the Authority to promulgate regulations regarding UROs and that the regulations violate Article II, § 1 of the Pennsylvania Constitution because the Act fails to provide any standards for the regulation of UROs.

Article II, Section 1 of the Pennsylvania Constitution provides that: "The legislative power of this Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and a House of Representatives." In *Gilligan v. Pennsylvania Horse Racing Commission*, 492 Pa. 92, 422 A.2d 487 (1980), our Supreme Court stated that:

It is axiomatic that the Legislature cannot constitutionally delegate the power to make law to any other branch of government or to any other body or authority. *State Board of Chiropractic Examiners v. Life Fellowship of Pennsylvania*, 441 Pa. 293, 297, 272 A.2d 478, 480 (1971). It may, however, "confer authority and discretion in connection

---

**2.** This Court's scope of review is limited to determining whether constitutional rights were violated, whether the Board committed an error of law and whether necessary findings of fact are supported by substantial evidence. 2 Pa.C.S. § 704.

with the execution of the law; it may establish primary standards and impose upon others the duty to carry out the declared legislative policy in accordance with the general provisions of the act." *Belovsky v. Redevelopment Authority*, 357 Pa. 329, 342, 54 A.2d 277, 284 (1947). The principal limitations on this power are twofold: **(1) the basic policy choices must be made by the Legislature,** *William Penn Parking Garage, Inc. v. City of Pittsburgh*, 464 Pa. 168, 212, 346 A.2d 269, 291 (1975); and **(2) the "legislation must contain adequate standards which will guide and restrain the exercise of the delegated administrative functions."** *Chartiers Valley Joint School District v. County Board of School Directors*, 418 Pa. 520, 529, 211 A.2d 487, 493 (1965). This does not mean, however, that all details of administration must be precisely or separately enumerated in the statute. *Chartiers, supra*, at 529, 211 A.2d 487; *see generally Hospital Ass'n of Pennsylvania v. MacLeod*, 487 Pa. 516, 410 A.2d 731 (1980).

*Id.* at 95–96, 422 A.2d at 489 (emphasis added).

Both Sections 306(f.1) and 306(f.2) of the Act were enacted as part of the 1993 amendments to the Workers' Compensation Act. Section 306(f.1) deals, in part, with UROs. Specifically, Section 306(f.1)(6)(i) provides that:

(6) Except in those cases in which a workers' compensation judge asks for an opinion from peer review under section 420, disputes as to reasonableness or necessity of treatment by a health care provider shall be resolved in accordance with the following provisions:

(i) The reasonableness or necessity of all treatment provided by a health care provider under this act may be subject to prospective, concurrent or retrospective utilization review at the request of an employe, employer or insurer. ***The department shall authorize utilization review organizations to perform utilization review under this act.*** Utilization review of all treatment rendered by a health care provider shall be performed by a provider licensed in the same profession and having the same or similar specialty as that of the provider of the treatment under review. Organizations not authorized by the department may not engage in such utilization review.

(ii) The utilization review organization shall issue a written report of its findings and conclusions within thirty (30) days of a request.

(iii) The employer or the insurer shall pay the cost of the utilization review.

(iv) If the provider, employer, employe or insurer disagrees with the finding of the utilization review organization, a petition for review by the department must be filed within thirty (30) days after receipt of the report. The department shall assign the petition to a workers' compensation judge for a hearing or for an informal conference under section 402.1. The utilization review report shall be part of the record before the workers' compensation judge. The workers' compensation judge shall consider the utilization review report as evidence but shall not be bound by the report.

77 P.S. § 531(6)(i) (emphasis added). Section 306(f.2) address medical services provided by coordinated care organizations but does not address UROs. However, Section 306(f.2)(7) provides that:

(7) The department shall have the power and authority to promulgate, adopt,

publish and use regulations for the implementation *of this section.*

77 P.S. § 531.1(7) (emphasis added).

As to the first part of Chiro–Med's argument that the Department did not have the authority to enact the Cost Containment Regulations at issue in this case, the provision in Section 306(f.1)(6)(i) of the Act that "[t]he department shall authorize utilization review organizations to perform utilization review under this act" gives the Department the required authority. In addition, Section 306(f.2)(7) gives the Department the power to implement regulations with regard to "this section." We believe that "this section" refers to the entire Section 306, which includes subsection (f.1) that deals with UROs, rather than just subsection (f.2). These two provisions together give the Department the power to implement regulations with regard to UROs. Therefore, we reject Chiro–Med's argument that the Department did not have the authority to enact the Cost Containment Regulations with regard to UROs.

■ Next, we address Chiro–Med's second argument that the regulations violate Article II, § 1 of the Pennsylvania Constitution because the Act fails to provide any standards for the regulation of UROs. Subsection (6) of Section 306 sets forth, in detail, the entire Utilization Review process. This process contains both the basic policy choices and contains adequate standards. Specifically, the basic policy choices and standards are that utilization reviews shall be performed by licensed providers in the same profession and shall only consider the reasonableness and necessity of medical treatment. The remaining parts of subsection (6) provide further guidance for the implementation of regulations as authorized by Section 306(f.2)(7). Therefore, we reject Chiro–Med's argument that the Cost Containment Regula-

tions violate Article II, Section 1 of the Pennsylvania Constitution.

■ Third, Chiro–Med argues that the regulations do not give the Chief of the Health Care Services Review Division the authority to revoke the authorization to perform reviews. In this case, Eileen K. Wunsch, the Chief of the Bureau's Health Care Services Review Division, revoked Chiro–Med's authorization to perform utilization reviews by letter dated October 2, 2003. Chiro–Med argues that this violates 34 Pa.Code § 127.669, which provides that "[u]pon investigation and following a conference with the Chief of the Medical Cost Containment Division, if *the Bureau* determines that a URO or PRO has violated the requirements of the act or this chapter, *it may revoke the authorization* of the URO or PRO to perform review functions under the act ..." Specifically, Chiro–Med argues that pursuant to this regulation, the Bureau, not the Chief of the Health Care Services Review Division, has the authority to revoke authorizations.

We reject Chiro–Med's argument in this regard. Clearly, the Chief of the Health Care Services Review Division is an agent of the Bureau of Workers' Compensation and, as such, is authorized to act on behalf of the Bureau. Therefore, we fail to see any violation of 34 Pa.Code § 127.669 in this case.

■ Fourth, Chiro–Med argues that the Hearing Officer improperly placed upon it the burden of proving that the Bureau abused its discretion in revoking its authorization to perform reviews when he stated in the Discussion section of his decision that "Chiro–Med has a high burden to carry in this appeal, namely to establish that the Bureau abused its discretion in revoking their authorization." Chiro–Med argues that neither the Act nor the regulations mention anything about a burden of

proof in a revocation proceeding. Rather, 34 Pa.Code § 127.670(a) provides that the Hearing Officer shall conduct a *de novo* hearing.

In support of its argument, Chiro–Med cites our decision in *Millcreek Manor v. Department of Public Welfare,* 796 A.2d 1020 (Pa.Cmwlth.2002). In *Millcreek Manor,* this Court stated that:

> In conducting a full evidentiary hearing, the administrative hearing officer is conducting a *de novo* review of the matter. "De novo" review entails, as the term suggests, full consideration of the case anew as if it was not heard before and no decision had been previously rendered. *Commonwealth v. Krut,* 311 Pa.Super. 64, 457 A.2d 114 (1983). The reviewing body is in effect substituted for the prior decision-maker and redecides the case. *D'Arciprete v. D'Arciprete,* 323 Pa.Super. 430, 470 A.2d 995, 996 (1984). In conducting a hearing *de novo,* the tribunal hears the matter in its original, not appellate, jurisdiction. [FN12] *In re Involuntary Commitment of Barbour,* 733 A.2d 1286, 1288 (Pa.Super.1999).

FN12. The difference between *de novo* review and appellate review is significant. Under *de novo* review, the reviewing tribunal conducts an independent fact-finding proceeding in which new evidence is taken and all issues are determined anew. Under appellate review, the reviewing tribunal examines the record to determine whether the agency's findings are reasonably supported by substantial evidence; the administrative order being reviewed carries a presumption of validity.

*Id.* at 1029. In *Millcreek Manor,* Millcreek Manor (Millcreek), a nursing home, petitioned for review of a decision of a Department of Public Welfare Hearing Officer who denied Millcreek's appeal from a decision of DPW's Long Term Care Programs Bureau. One of the issues that Millcreek raised on appeal was that the hearing officer failed to conduct a *de novo* hearing as required by DPW's regulations. We agreed with Millcreek because the hearing officer improperly reviewed the prior decision under an "abuse of discretion" standard. We stated that:

> by reviewing DPW's actions for an abuse of discretion, the hearing officer was clearly conducting an appellate review of DPW's actions rather than acting as an independent fact finder in a *de novo* proceeding. In conducting a *de novo* review, the hearing officer of the Bureau, as the reviewing tribunal, is in effect substituted for the LTC Bureau, the prior decision-maker, and must redecide the case.

*Id.* at 1030. Accordingly, we vacated the decision of the hearing officer and remanded the case for a *de novo* hearing and the issuance of a proper adjudication. In support of our decision, we cited the case of *Lawson v. Pennsylvania Department of Public Welfare,* 744 A.2d 804 (Pa.Cmwlth. 2000). In that case, Lawson, who is a C–5 quadriplegic, argued that he did not receive a *de novo* hearing when he appealed the decision of Homemaker Services of the Metropolitan Area, Inc. (Homemaker) to terminate his attendant care services. Homemaker provided these services as a contractor of DPW. We agreed with Lawson and stated that:

> the Hearing Officer reviewed the investigation and conclusions of Homemaker for an "abuse of discretion" or an "arbitrary and capricious action." ... The Hearing Officer does not make any finding of fact as to whether the allegations against [Lawson] are true but rather concludes that [Homemaker's Executive] Director reasonably exercised his professional judgement to reach his conclusions. Since the Hearing Officer applied an appellate court standard of review, giving deference to the findings of fact

and credibility determinations of Homemaker, the investigation by Homemaker served both a prosecutorial and adjudicatory function, which is a violation of due process.

*Id.* at 807. Accordingly, we vacated the decision of the hearing officer and remanded the case for a proper *de novo* hearing. However, because the hearing officer had already developed an extensive record, we stated that the hearing officer did not need to take any more testimony. Rather, we instructed the hearing officer to make a new decision based on the record already developed.

■ In the case now before this Court, the Hearing Officer held a hearing and the parties presented several witnesses and numerous exhibits. As we stated in *Millcreek,* " 'De novo' review entails, as the term suggests, full consideration of the case anew as if it was not heard before and no decision had been previously rendered." *Id.,* 796 A.2d at 1029. However, like the hearing officers in *Millcreek* and *Lawson,* it is evident that the Hearing Officer in this case did not make an independent judgment as to whether Chiro–Med's authorization to perform utilization reviews should be revoked but rather considered whether the previous decision by the Bureau to revoke Chiro–Med's authorization was an "abuse of discretion." In doing so, the Hearing Officer improperly gave deference to the prior determination of the Bureau rather than making a new decision as if no decision has been previously rendered regarding Chiro–Med's authorization to perform utilization reviews. As set forth in *Millcreek* and *Lawson,* this is clearly an appellate standard of review and therefore inappropriate in this case, as 34

Pa.Code § 127.670(a) requires that the Hearing Officer conduct a *de novo* hearing.

■ Finally, we note that the Department argues that because Chiro–Med's initial authorization period to perform utilization reviews has expired and because Chiro–Med did not request reauthorization, this matter is now moot. We disagree. The Cost Containment Regulations give Chiro–Med the right to a *de novo* hearing regarding whether its authorization was properly revoked. The resolution of this matter could have an impact on whether Chiro–Med decides to perform utilization reviews again in the future and whether the Department of Labor and Industry would decide to grant Chiro–Med permission to conduct such reviews. Thus, this matter is not moot.

As noted above, the Hearing Officer held a hearing, heard testimony and received evidence. Thus, as in *Lawson,* we see no reason for any further testimony. Therefore, on remand, the Hearing Officer need only review the record that has already been developed and then make new credibility determinations, findings of fact and conclusions of law and issue a new decision pursuant to the proper *de novo* standard, in that the Hearing Officer shall give "full consideration of the case anew as if it was not heard before and no decision had been previously rendered." *Millcreek,* 796 A.2d at 1029. Accordingly, the decision of the Hearing Officer is vacated and this case is remanded for a new decision in accordance with the foregoing opinion.[3]

### *ORDER*

AND NOW, July 14, 2005, the decision of the Hearing Officer in the above-captioned matter is VACATED and this case

---

**3.** Because we are remanding this case for a new decision, we need not address Chiro-

Med's remaining arguments.

is REMANDED for a new decision. On remand, the Hearing Officer need only review the record that was previously developed and then make new credibility determinations, findings of fact and conclusions of law and issue a new decision pursuant to the proper *de novo* standard.

Jurisdiction relinquished.