# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Matthew Reid,                                    :
                    Appellant          :
                                   :
      v.                          :          No. 1021 C.D. 2023
                                   :          SUBMITTED:  March 4, 2025
Borough of Whitehall                            :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                HONORABLE STACY WALLACE, Judge (P.)
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


## OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**                                 **FILED:  June 13, 2025**


Matthew Reid, Appellant, appeals the denial of his application for disability retirement benefits from the Borough of Whitehall, which was affirmed by the Court of Common Pleas of Allegheny County.  We vacate the order of the trial court and remand for the Borough's *de novo* review of the record already made below and issuance of a new adjudication thereafter.

The relevant facts are as follows.  In May 2017, Appellant was a detective in the Borough's police department participating in firearm qualification activities at the firing range when he experienced a myocardial infarction (heart attack) and underwent cardiac catheterization.  Later, he was diagnosed with mental health conditions, variously described as post-traumatic stress disorder (PTSD), depression, and/or anxiety.  From the date of his heart attack, Appellant received

benefits under what is commonly known as the Heart and Lung Act[1] and the Workers' Compensation Act.[2]

In August 2019, Appellant submitted his application for disability retirement benefits under the Police Pension Plan, which is maintained under a Borough Ordinance. The Plan Administrator denied benefits on the ground that Appellant's condition did not meet the definition of "Total and Permanent Disability" set forth in Section 1.32 of the Ordinance:

> Total and Permanent Disability shall mean a condition of physical or mental impairment due to which a Participant is unable to perform the usual and customary duties of Employment and which is reasonably expected to continue to be permanent for the remainder of the Participant's lifetime. For purposes of this section 1.32 and Article V, *a condition shall not be treated as a Total and Permanent Disability unless such condition is a direct result of and occurs in the line of duty of Employment*. Therefore, an Employee whose physical or mental impairment does not occur in the line of duty . . . is not entitled to receive disability benefits under the Plan.

[Ordinance § 1.32, Reproduced R. "R.R." at 310a (emphasis supplied).] By way of further explanation, the Plan Administrator stated that the reports of an independent medical examination and from Appellant's treating physician "indicated [that] [Appellant] was physically capable of returning to full duties as a police officer, and, specifically, was not prevented from doing so based on any cardiac condition. Moreover, it appears that any mental or emotional disability arose after [he] was on leave." (Plan Administrator Letter, Borough Ex. C, R.R. at 339a.) With respect to

---

[1] Act of June 28, 1935, P.L. 477, *as amended*, 53 P.S. §§ 637-638.

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

the emotional disability claimed, the Plan Administrator continued, "because [Appellant's] depression and anxiety did not occur [in] the line of duty, his condition does not meet the definition of Total and Permanent Disability for purposes of the [Pension] Plan." (*Id.* at 340a.)

Appellant appealed the denial of his application and a Hearing Officer, the selection of whom was agreed to by the Borough and Appellant, was appointed.[3] A hearing was held before the Hearing Officer in July 2021, at which both parties presented testimonial and documentary evidence. Appellant presented the testimony of himself and his wife, and Jeffrey Friedel, M.D., a cardiologist who reviewed Appellant's medical records and issued a report. Appellant also entered, *inter alia*, notes from his treating cardiologist, Benjamin Kalsmith, M.D., containing conflicting opinions about Appellant's ability to return to work, and reports from his former and current treating psychiatrists, Guillermo Borrero, M.D., and Michael Jason Naguit, M.D. Testifying for the Borough were the Plan Administrator; Jeffrey Garrett, M.D., a cardiologist who conducted an independent medical evaluation of Appellant in his workers' compensation case, including reviewing Appellant's medical records, examining Appellant, and issuing a report; and Glen Getz, Ph.D., a psychologist who performed an independent psychological examination of Appellant in his workers' compensation case, reviewed Appellant's records, examined Appellant, and issued a report.

---

[3] The Ordinance provides for review of the Plan Administrator's determination by the Borough Council. Apparently, this responsibility was delegated to the Hearing Officer (the record does not show by what process the appointment was made). The Ordinance is maintained under what is known as the Municipal Police Pension Law, Act of May 9, 1956, P.L. 1804, *as amended*, 53 P.S. §§ 767-778, commonly called "Act 600," and appeals are subject to the Local Agency Law, 2 Pa.C.S. §§ 551-555, 751-754.

3

Following the hearing, on May 13, 2022, the Hearing Officer issued a decision, in which he affirmed the decision of the Plan Administrator. In so doing, the Hearing Officer stated that he gave "due deference" to the determination of the Plan Administrator, and upon review of the evidence was "unable to overturn that determination." (Hearing Officer Op. at 5.) The Hearing Officer found that Appellant had recovered from his heart attack prior to his request for a disability pension "such that he was physically able to return to full duty as a police officer but for any psychological or emotional fear and anxiety that he suffers from." (Hearing Officer Op., Conclusion of Law "C.L." 13.) The Hearing Officer specifically relied upon the testimony of Drs. Friedel and Garrett with respect to Appellant's heart condition. The Hearing Officer did not acknowledge or discuss the brief, contradictory notes of Dr. Kalsmith in his decision.

With respect to Appellant's mental condition, while finding Appellant and his wife credible with regard to his ongoing psychological and emotional fears and anxiety, the Hearing Officer found that those did not constitute a psychological condition under the definition of Total and Permanent Disability because they were "not a direct result of an event or incident which occurred in the line of duty," crediting the testimony of Dr. Getz. (*Id.*, C.L. 14). The Hearing Officer noted that neither Appellant's former nor current treating psychiatrists stated that his psychological condition was a direct result of and occurred in his line of duty. (*Id.*, C.L. 14.a.) Further, the Hearing Officer cited Dr. Getz's finding that he could not find support for Appellant's psychological condition being due to work activities and that

> the triggers for his anxiety are more likely than not an artifact of his fear of death and another cardiac event, rather than being caused by his employment activities. . . .

4

> Taken as a whole, his anxiety and the PTSD reaction from his [heart attack] are not due to his work[-]related activities, but rather any situation that could increase his likelihood of death increases his anxiety.

[*Id.*, C.L. 14.b (quoting Getz Report, Borough Ex. H, R.R. at 386a).] The Hearing Officer summarized his determination as being that "the condition which prevents [Appellant] from returning to work as a police officer, a psychological condition described by his treating and/or examining physician(s) as depression, anxiety or PTSD, did not occur in the line of duty as required by the definition of Total and Permanent disability." (*Id.* at Summary.)

Appellant filed a statutory appeal of the Hearing Officer's decision in the trial court, challenging not only the merits of the denial of his application but also raising the issue of whether the Hearing Officer had a conflict of interest. With regard to the latter issue, the trial court conducted an evidentiary hearing and issued an order determining that the Hearing Officer did not have a conflict of interest. Later, after briefing and argument, the trial court issued a July 19, 2023 order denying the appeal from the Hearing Officer's decision. Appellant filed a notice of appeal with the Superior Court, which transferred the matter to this Court. Appellant filed a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), Pa.R.A.P. 1925(b), and the trial court issued an opinion in support of its orders.

On appeal, Appellant raises the following questions, which we have paraphrased for concision and clarity:

1. Whether the Hearing Officer applied the incorrect standard of review by deferring to the Plan Administrator's decision denying benefits instead of considering the matter *de novo*?

5

2. Whether the Hearing Officer applied the wrong standard to the question of whether Appellant's mental impairment is a direct result of and occurred in the line of duty as a police officer by failing to properly apply controlling case law?

3. Whether the Hearing Officer's decision is supported by substantial evidence where he did not provide a rationale for not finding that the opinions of Appellant's treating psychiatrists were sufficient to support the disability application?

4. Whether the Hearing Officer's failure to evaluate or acknowledge the medical impressions of Appellant's treating cardiologist, Dr. Kalsmith, constituted a capricious disregard of competent evidence?

5. Whether the Hearing Officer's decision lacked substantial evidentiary support because he did not recite and analyze the testimony of Dr. Friedel; took a statement of Dr. Friedel out of context; and acknowledged Dr. Friedel's opinion of permanent disability but did not explain his reasons for not relying upon it?

6. Whether the decision of the Hearing Officer must be vacated because he had a conflict of interest?

(*See* Appellant's Br. at 5.)

First, Appellant argues that the Hearing Officer improperly deferred to the Plan Administrator's determination on the question of Appellant's entitlement to disability pension benefits rather than considering the case *de novo*.[4] Appellant points to various statements, all contained in the "discussion" portion of the decision:

---

[4] *De novo* review entails, as the term suggests, full consideration of the case anew as if it was not heard before and no decision had been previously rendered. *Millcreek Manor v. Dep't of Pub. Welfare*, 796 A.2d 1020, 1029 (Pa. Cmwlth. 2002). The reviewing body is in effect substituted for the prior decision-maker and redecides the case. *Id.*

the Hearing Officer's quotation of the Plan Administrator's reasons for his denial of benefits to Appellant (Hearing Officer Op. at 4); the Hearing Officer's statement that "[a] review of the medical reports available to the Plan Administrator, as set forth in his letter denying [] Appellant's request for a disability pension . . . supports [the Plan Administrator's] determination that [] Appellant cannot be considered to have a Total and Permanent Disability as defined by the plan" (*id.* at 5); and the Hearing Officer's statement that "[g]iving due deference to that determination [that Appellant did not have a Total and Permanent Disability] of the Plan Administrator, upon review of the reports and testimony presented at the hearing in this matter this Hearing Officer is unable to overturn that determination" (*id.*).

The Borough does not dispute that *de novo* review was the correct standard for the Hearing Officer to apply; the Borough asserts that he did so. However, this assertion is inconsistent with the Hearing Officer's discussion. The Hearing Officer relied upon Section 5.04 of the Ordinance in affording deference to the Plan Administrator's determination:

> As directed by the language of the [p]lan, the Plan Administrator . . . "shall in its sole discretion determine whether a Participant shall have incurred a Total and Permanent Disability." [(Ordinance § 5.04, R.R. at 320a.)] In exercising that discretion, the Plan Administrator determined that the mental impairment "did not occur in the line of duty." A review of the medical reports available to the Plan Administrator, as set forth in his letter denying the Appellant's request for a disability pension . . . supports [the Plan Administrator's] determination that the Appellant cannot be considered to have a Total and Permanent Disability as defined by the plan. Giving due deference to that determination of the Plan Administrator, upon review of the Reports and testimony presented at the hearing in this matter this Hearing Officer is unable to overturn that determination.

7

(Hearing Officer Op. at 5.) Although Section 5.04 of the Ordinance gives the Plan Administrator "sole discretion" to make determinations, Section 8.08 allows an applicant for disability retirement benefits which are denied to appeal such determinations; such a claimant "shall have the right to request a full and fair review by the [Borough] Council of the initial determination" [*Id.* § 8.08(c), R.R. at 326(a)]. The Borough Council seems, in this case, to have delegated the responsibility for providing a hearing to the Hearing Officer.

In *Millcreek Manor v. Department of Public Welfare*, 796 A.2d 1020 (Pa. Cmwlth. 2002), we considered a state agency's regulation requiring a "full evidentiary hearing" to contest a state agency action. *Id.* at 1028. We held that "[i]n conducting a full evidentiary hearing, the administrative hearing officer is conducting a *de novo* review of the matter." *Id.* at 1029. To grant deference to a prior determination would mean a hearing officer is conducting an appellate review rather than acting as an independent fact finder in a *de novo* proceeding. *See Chiro-Med Rev. Co. v. Bureau of Workers' Comp.*, 879 A.2d 373, 381 (Pa. Cmwlth. 2005) (by utilizing an abuse of discretion standard of review of an agency determination, hearing officer improperly granted deference to prior determination). This is not simply a requirement of the Ordinance; it implicates principles of due process as well, which require a "neutral and detached judge in the first instance." *Perroz v. Fox Chapel Borough*, 143 A.3d 520, 533 (Pa. Cmwlth. 2016) [quoting *Ward v. Vill. of Monroeville*, 409 U.S. 57, 62 (1972)]. The requirement is no different when a local legislative body delegates adjudicative functions to a private party. *Id.* [quoting *Schweiker v. McClure*, 456 U.S. 188 (1982)]; *see also Krenzel v. Se. Pa. Transp. Auth.*, 840 A.2d 450 (Pa. Cmwlth. 2003).

8

As in *Millcreek Manor* and *Chiro-Med*, vacation and remand for review *de novo* of the record already made is the appropriate remedy in such an instance. No further evidentiary proceedings are necessary, as there is no assertion that the hearing itself was incomplete or unfair—indeed, Appellant asks for remand so a new review of the record already developed may be conducted.

Appellant's second through fifth arguments allege deficiencies in the Hearing Officer's consideration of the legal issues and evidence presented to support that Appellant's mental health condition and/or heart condition constitute Total and Permanent Disability.[5] As these issues relate to findings of fact and conclusions of law which we hold were improperly colored by deference to the Plan Administrator's determination, they are not ripe for disposition.

Finally, Appellant contends that the Hearing Officer was "in a position of conflict" that "presented a temptation—even an unconscious temptation—to tip

---

[5] Briefly, Appellant's second argument is that the Hearing Officer erred in construing his mental injury not to be, in the parlance of Section 1.32 of the Ordinance, "*a direct result of* and *occur[ing] in the line of duty* of Employment."

Appellant's third argument is that the evidence shows that Appellant's mental injury disqualifies him from police work.

Appellant's fourth argument concerns the absence of an acknowledgement or discussion of Dr. Kalsmith's "subsequent opinion." (Appellant's Br. at 52.) By "subsequent opinion," Appellant refers to an undated note from Dr. Kalsmith that "considering the nature of his position as a police officer, namely, the stress surrounding a police officer's duties and the potential to be involved in physical altercations, it is my opinion that [he] should not return to police work from a cardiac perspective." (Kalsmith Note No. 2, Appellant Ex. 2, R.R. at 270a.) The opinion is "subsequent" to a handwritten note from Dr. Kalsmith stating that Appellant "may return to work with no restrictions as of 1/1/19." (Kalsmith Note No. 1, R.R. at 272a.)

Appellant's fifth argument concerns whether the Hearing Officer's decision was supported by substantial evidence because the decision allegedly inadequately or incorrectly treats the report and live testimony of Dr. Friedel.

the balance of the decision in favor of [the] Borough." (Appellant's Br. at 61.) Appellant's evidence of such conflict is that the Hearing Officer is the solicitor of a municipality adjoining the Borough, both of which participate in joint governmental entities and share resources, including fire and police services. However, "a tangential relationship between a tribunal member and the litigation, without evidence of bias, prejudice capricious disbelief or prejudgment, is insufficient to warrant recusal." *Christman v. Zoning Hearing Bd. of Twp. of Windsor*, 854 A.2d 629, 634 (Pa. Cmwlth. 2004) (citing cases). Here, there is no alleged "relationship" between the Hearing Officer and the Borough—the relationship is between the Hearing Officer and an adjoining municipality, for which he serves as solicitor. This is insufficient grounds to require recusal. At all events, as it is the Borough which is ultimately responsible for issuance of an adjudication, we leave any decision concerning the identity of the hearing officer to be used, if any, to the Borough.

In light of the foregoing, we vacate the July 19, 2023 order of the trial court and remand to the trial court with instructions to remand to the Borough for consideration of the existing evidentiary factual record and issuance of a new adjudication applying a *de novo* standard of review within 120 days of the trial court's remand order.

**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

10

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Matthew Reid, | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 1021 C.D. 2023 |
| | : | |
| Borough of Whitehall | : | |

# O R D E R

AND NOW, this 13th day of June, 2025, the July 19, 2023 Order of the Court of Common Pleas of Allegheny County is VACATED and the matter REMANDED. The Court of Common Pleas is INSTRUCTED to promptly remand the matter to the Borough of Whitehall for issuance of a new adjudication after the Borough considers the existing evidentiary factual record *de novo* within 120 days of the remand order of the Court of Common Pleas.

Jurisdiction is relinquished.

**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita