**NORTHWESTERN YOUTH SERVICES, INC., Adelphoi Village, Appalachian Youth Services, Inc., Hermitage House Youth Services, Inc., Pyramid Healthcare, Inc. and Tabor Children's Services, Petitioners**

v.

**COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF PUBLIC WELFARE and Office of Children, Youth and Families, Department of Public Welfare, Respondents.**

Commonwealth Court of Pennsylvania.

Argued May 18, 2010.
Decided July 23, 2010.

**990**

John A. Kane, Harrisburg and James G. Colins, Philadelphia, for petitioner, Northwestern Youth Services, Inc.

John S. Stapleton, Philadelphia, for respondents.

BEFORE: SIMPSON, Judge, and McCULLOUGH, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Senior Judge FRIEDMAN.

■ Northwestern Youth Services, Inc., Adelphoi Village, Appalachian Youth Services, Inc., Hermitage House Youth Services, Inc., Pyramid Healthcare, Inc., and Tabor Children's Services (collectively, Providers) have filed a Motion for Summary Relief (Motion) seeking to invalidate administrative bulletins issued by the Commonwealth of Pennsylvania, Department of Public Welfare and the Department of Public Welfare, Office of Children, Youth and Families (together, the Department) on the ground that the bulletins are unpromulgated regulations. For the reasons that follow, we grant Providers' Motion.[1]

The Department supervises and provides funding to county children and youth agencies (County Agencies), which offer their services to the public either directly or through contracts with licensed, private agencies. Providers here are private agencies that provide out-of-home residential placement services pursuant to such contracts. Through 2007, County Agencies would submit annual needs-based budgets to the Department for review in accordance with statutory and regulatory payment standards. The Department would allocate state and federal funds to County Agencies consistent with approved needs-based budgets pursuant to Article VII of the Public Welfare Code,[2] 62 P.S. §§ 701–709.3.

Beginning in 2008, the Department enacted a series of statewide administrative bulletins that imposed new cost-reporting

---

1. In ruling on a motion for summary relief, this court must view the evidence of record in the light most favorable to the non-moving party and may enter judgment only if: (1) there are no genuine issues as to any material facts, and (2) the right to relief is clear as a matter of law. *Buehl v. Horn,* 761 A.2d 1247, 1248–49 (Pa.Cmwlth.2000), *affirmed,* 568 Pa. 409, 797 A.2d 897 (2002); *see* Pa. R.A.P. 1532(b).

2. Act of June 13, 1967, P.L. 31, *as amended,* 62 P.S. §§ 101–1503.

requirements on County Agencies and providers and set maximum reimbursement limits for out-of-home residential placement services. Specifically, the Department adopted Bulletin No. 3170–08–01 (Bulletin 08–01), effective July 1, 2008, which mandated that County Agencies and providers submit detailed cost data to the Department relating to their residential services contracts. Bulletin 08–01 required that providers use the requisite forms to identify categories of costs within federal and state regulations and to calculate appropriate per diem rates under federal regulations for children placed in foster care. The Department then reviewed all per diems to verify that they complied with state and federal regulations and determined the allowable levels of reimbursement for services purchased by County Agencies.

The Department subsequently adopted Bulletin No. 3170–09–01 (Bulletin 09–01), effective July 1, 2009, to replace and expand the terms of Bulletin 08–01. Bulletin 09–01 required that providers use the requisite forms to submit funding requests to the Department, which would then inform the providers of the maximum amount of state and federal participation in the requested contract rates. If the providers failed to comply with Bulletin 09–01, County Agencies were required to fund the entire amount of the contracted services.

On July 16, 2009, Providers filed a Petition for Review (Petition) in this court's original jurisdiction, seeking, among other things, a declaration that the administrative bulletins are unpromulgated regulations and requesting that the Department be enjoined from mandating compliance with the bulletins. Shortly thereafter, on August 25, 2009, the Department adopted a third bulletin governing reimbursement for out-of-home residential placement services, Bulletin No. 3170–09–02 (Bulletin 09–02), which is the only bulletin at issue here.[3] On August 28, 2009, the Department filed preliminary objections to Providers' Petition.

Prior to this court's decision on the preliminary objections,[4] Providers filed the instant Motion on November 16, 2009. In their Motion, Providers assert that Bulletin 09–02 is an unpromulgated regulation because it attempts to impose statewide mandates that did not exist prior to the Bulletin's adoption. For example, Bulletin 09–02 now requires providers to complete various prescribed forms and submit detailed cost information to the Department for review and approval before entering into contracts with County Agencies. Pro-

---

3. Bulletin 09–02 was made retroactive to July 1, 2009, and was intended to replace Bulletin 09–01 in its entirety. In a letter to its stakeholders, dated August 27, 2009, the Department explained:

> [The Department] is revising and reissuing Bulletin 3170–09–02 in response to questions and concerns that were raised about the language contained in OCYF Bulletin 3170–09–01. The intent of the revised Bulletin is to clarify the Department's:
>
> - Auditing and monitoring authority for out-of-home placement services expenditures; and
> - Role in establishing the maximum allowable levels of reimbursement for federal and state dollars for out-of-home place-

ment services as well as the counties' responsibility to negotiate and execute agreements with providers for out-of-home services.

Although Bulletin 09–02 was issued after the filing of Providers' Petition and was not the subject of the Petition, the parties agree that it is the only bulletin presently in effect. Therefore, Bulletin 09–02 will be the focus of our analysis.

4. By memorandum opinion and order dated December 4, 2009, this court sustained the preliminary objection in the nature of a demurrer to Count III of the Petition but overruled the preliminary objections in all other respects.

viders also claim that Bulletin 09–02 sets upper contract payment limits per provider/per service and imposes financial penalties for failure to comply. Providers claim that these newly imposed mandates interfere with their contract negotiations with County Agencies and conflict with Article VII of the Public Welfare Code.

In its response, filed on December 14, 2009, the Department counters that Bulletin 09–02 is within the scope of its statutory and regulatory authority. The Department asserts that Bulletin 09–02 merely implements the audit and reimbursement procedures already set forth in the Department's existing regulations. The Department relies primarily on 55 Pa.Code § 3170.84(a) (emphasis added), which states:

> (a) The maximum level of reimbursement in which the Department will participate when services are provided on a unit of service basis shall be the lesser of:
>
> (1) *That established by regulation, directive, or memorandum published by the Department.*
>
> (2) That charged another government agency which purchases the same service from the provider agency.
>
> (3) That charged the general public as evidenced by a schedule of charges officially adopted by the provider.

Thus, the Department claims that it is authorized to set the maximum reimbursement level by "directive" or "memorandum," i.e., administrative bulletin, when services are provided on a unit-of-service basis. The Department also claims authority to issue the bulletin under 55 Pa. Code § 3170.106(a),[5] which grants the Department the authority to review records, documents, and other evidence of costs anticipated to be incurred by County Agencies and providers of out-of-home placement services.

 The central issue before this court is whether Bulletin 09–02 constitutes an invalid regulation because it was not promulgated pursuant to the requirements of the Act commonly known as the Commonwealth Documents Law (CDL).[6] The determination of whether an agency's pronouncement is an unpromulgated regulation is a question of law. *Eastwood Nursing & Rehabilitation Center v. Department of Public Welfare*, 910 A.2d 134, 141 (Pa.Cmwlth.2006), *appeal denied*, 592 Pa. 791, 927 A.2d 626 (2007). If an agency fails to properly promulgate a regulation in accordance with the CDL, we will declare the pronouncement a nullity. *Borough of Bedford v. Department of Environmental Protection*, 972 A.2d 53, 62 (Pa.Cmwlth.2009) (*en banc*).

---

**5.** This regulation states that "[t]he records of the county children and youth agency and its contracted service providers are subject at reasonable times to review and audit by the Department to determine compliance with regulations and policies." 55 Pa.Code § 3170.106(a).

**6.** Act of July 31, 1968, P.L. 769, *as amended*, 45 P.S. §§ 1102–1602. The formal requirements for promulgation of a regulation include: publication of a notice of intent to promulgate or amend, which must include the text of the proposed regulation; a statement of the statutory or other authority under which the regulation is proposed; a brief explanation of the proposed regulation; and a request for written comments by any interested parties. Section 202 of the CDL, 45 P.S. § 1202. The regulation then must be approved by the Attorney General before being deposited with the Legislative Reference Bureau. Sections 205 and 207 of the CDL, 45 P.S. §§ 1205, 1207; *see Germantown Cab Company v. Philadelphia Parking Authority*, 993 A.2d 933, 937 n. 12 (Pa.Cmwlth.2010) (*en banc*) (noting that, while section 205 of CDL refers to approval by Department of Justice, duty to review proposed regulations has been transferred to Attorney General).

■ We begin our analysis by distinguishing a regulation requiring formal promulgation from a statement of policy, which need not be formally promulgated. Our Supreme Court has explained that an agency pronouncement constitutes a regulation when it purports to create a "binding norm":

> "The critical distinction between a substantive rule and a general statement of policy is the different practical effect that these two types of pronouncements have in subsequent administrative proceedings.... A properly adopted substantive rule establishes a standard of conduct which has the *force of law....* A general statement of policy, on the other hand, does not establish a 'binding norm'.... A policy statement announces the agency's tentative intentions for the future."

*Pennsylvania Human Relations Commission v. Norristown Area School District,* 473 Pa. 334, 350, 374 A.2d 671, 679 (1977) (citation omitted). "Statements of policy are agency pronouncements that declare [the agency's] future intentions but which are applied prospectively on a case-by-case basis and *without* binding effect." *Borough of Pottstown v. Pennsylvania Municipal Retirement Board,* 551 Pa. 605, 610 n. 8, 712 A.2d 741, 743 n. 8 (1998) (emphasis in original). A statement of policy also tracks the language of a statute and does not expand on its plain meaning. *Bedford,* 972 A.2d at 64.

■ To determine whether an agency has attempted to establish a binding norm, we must consider: (1) the plain language of the enactment; (2) the manner in which the agency implements it; and (3) whether it restricts the agency's discretion. *Cash America Net of Nevada, LLC v. Commonwealth,* 978 A.2d 1028, 1033 (Pa.Cmwlth. 2009) (*en banc* ). We will address each of these factors below.

**(1) Plain Language of Bulletin 09–02**

■ The Department characterizes Bulletin 09–02 as offering mere "guidelines" to County Agencies and providers of out-of-home placement services. (Bulletin 09–02 at 1.) However, a review of the Bulletin's plain language establishes that it is replete with mandatory, restrictive language that is indicative of a regulation. For example, in the "Background/Discussion" section, the Bulletin states, "[T]he maximum levels of state and federal reimbursement approved by the Department are *binding* on the counties...." (Bulletin 09–02 at 3 (emphasis added).) The Bulletin then outlines the procedures for submitting cost data to the Department for review and approval as follows:

> The Department requests that all public and private providers of out of home placement services who anticipate receiving Title IV–E or State Act 148 funding through the Department in FY 2009–2010 use the pre-contractual audit reports contained within this bulletin to report, *[sic]* the prior or anticipated expenditures associated with their contracted ... funding requests. The Department will review the pre-contractual audit forms to verify the appropriate and allowable expenditures for the prior and/or anticipated out of home placement services and also will provide the maximum allowable federal and state reimbursement. Counties may decide to wait [to enter] into contracts until the Department's determination of the approved levels or may enter into contracts prior to receiving the Department's approval. However pursuant to 55 Pa.Code § 3170.103, **expenditures above the level of Departmental participation and those services funded without Departmental approval shall**

be the fiscal responsibility of the county.

(*Id.* at 4 (emphasis in original); *see id.* at 9, 11 (containing similar language).) Later, with regard to foster family providers, the Bulletin states:

[A provider's] [f]ailure to submit a complete set of contract documentation forms within the appropriate time frame will result in the county receiving a maximum allowable financial participation that is based on the incomplete information submitted by the provider and full payment of that per diem will be the responsibility of the county contracting agency.

(*Id.* at 13.) Furthermore, with regard to institutional residential facilities, after listing detailed instructions for the completion of a cost allocation plan, the Bulletin cautions:

*This section is mandatory.* Any contract documentation submitted without the proper completion of this information will not be accepted by OCYF for review or the expenditures will not be selected for state and federal financial participation due to the lack of detail supporting the reported costs.

(*Id.* at 80 (emphasis added).) [7]

This language, which conditions Departmental reimbursement for children and youth services contracts on strict cost reporting procedures, does not constitute a mere statement of policy, but rather purports to have the binding force of a regulation.

We find *Eastwood Nursing* instructive here. In that case, the Department issued what it labeled a "Statement of Policy" (SOP), announcing how the Department intended to exercise its regulatory discretion to reduce medical assistance reliance on institutional services. *Eastwood Nursing*, 910 A.2d at 137. Prior to the issuance of the SOP, licensed nursing facilities were automatically enrolled in the Department's medical assistance program; however, the SOP " 'dramatically alter[ed]' " this procedure by requiring nursing facilities to request and obtain Departmental approval before entering into enrollment agreements. *Id.* at 147–48 (citation omitted). Eastwood Nursing submitted a request pursuant to the SOP, which the Department denied.

Thereafter, Eastwood Nursing filed a petition for review in this court's original jurisdiction, challenging the validity of the SOP on the basis that it was an unpromulgated regulation. Applying the first prong of the binding norm test, this court noted that, in drafting the SOP, the Department attempted to use terminology characteristic of a statement of policy. Nonetheless, we found that the SOP's plain language "indicates the Department wrote the provision to restrict its staff from granting any request for enrollment of a nursing facility in the [medical assistance] program." *Id.* at 146. Thus, we concluded that "the application and effect of the language in the provision, taken as a whole, shows the provision to be restrictive, directive, substantive, and, thus, more characteristic of a regulation." *Id.*

Likewise, although Bulletin 09–02 purports to set forth "guidelines," it actually precludes the Department from granting any state or federal funds to a County

---

7. *See also* Bulletin 09–02 at 32 ("[T]he expenditure needs to be **clearly identified** separately from any other expenditure. If the line item description is non-specific, Federal and State funds **will not participate** in that expense.") (emphasis in original); *id.* at 77 ("The expenditure needs to be clearly identified and separate from any other expenditure. If the line item description is non-specific, OCYF **will not participate** in the expense with Federal and State funds.") (emphasis in original).

Agency if a contracted provider fails to comply with its specific cost-reporting requirements. Similar to the purported SOP in *Eastwood Nursing*, the language of Bulletin 09–02, taken as a whole, is "restrictive, directive, [and] substantive," and, therefore, more akin to a regulation than a statement of policy.

### (2) Implementation of Bulletin 09–02

■ Regarding the issue of implementation, our supreme court has explained:

"A general statement of policy ... is neither a rule nor a precedent but is merely an announcement to the public of the policy which the agency hopes to implement in future rulemakings or adjudications."

*Norristown*, 473 Pa. at 349–50, 374 A.2d at 679 (citation omitted); *see Pottstown*, 551 Pa. at 610 n. 8, 712 A.2d at 743 n. 8. By its own terms, Bulletin 09–02 does not announce the Department's *future* intent; in fact, it imposes cost-reporting requirements that were intended to take retroactive effect.

Moreover, the language of Bulletin 09–02 indicates that its terms are to be treated as requirements rather than as guidelines. Indeed, the Bulletin states that, if a provider fails to comply with the cost-reporting procedures, the Department will not reimburse the County Agency for any portion of that provider's services. In this regard, Bulletin 09–02 establishes a binding norm. *Cf. Eastwood Nursing*, 910 A.2d at 148 (finding purported SOP created binding norm where, in implementing SOP, Department treated its provisions more as "requirements" than as "guidelines"; if SOP provisions were truly to be regarded as guidelines, SOP would have provided "factors to *consider* in making a determination") (emphasis in original).

### (3) Department's Discretion

■ Finally, we must consider whether Bulletin 09–02, as applied, restricts the Department's discretionary power. A statement of policy leaves the agency free to decide whether or not to follow the announced policy in an individual case, whereas a regulation does not. *Department of Environmental Resources v. Rushton Mining Company*, 139 Pa. Cmwlth. 648, 591 A.2d 1168, 1173, *appeal denied*, 529 Pa. 626, 600 A.2d 541 (1991); *see Bedford*, 972 A.2d at 64 (stating that a pronouncement that leaves an agency with discretion to deviate from its terms is a statement of policy, not a regulation).

Here, it is evident from the language of Bulletin 09–02 that the Department has no discretion to deviate from its terms. If a provider fails to submit its cost data in the manner and timeframe prescribed by the Bulletin, the Department will not provide reimbursement for that provider's services. (Bulletin 09–02 at 13; *see id.* at 4, 9, 11.) Bulletin 09–02 includes no provision allowing the Department to make an exception in an individual case or under certain circumstances. Therefore, because the Bulletin restricts the Department's discretion, we conclude that it creates a binding norm. *See Rushton Mining*, 591 A.2d at 1174 (observing that inherent in a uniform, statewide policy is the fact that the regulation will necessarily be binding on the agency and the agency's personnel will have no discretion to vary its terms and conditions).[8]

---

**8.** The Department contends that Bulletin 09–02 is not binding because it permits County Agencies to enter into contracts with providers that choose *not* to submit their cost data to the Department. This argument completely misses the point. The relevant inquiry is not whether the Bulletin restricts the counties' or the providers' discretion, but whether it restricts the *agency's*, i.e., the Department's, discretion. We conclude that it does.

The Department asserts that, regardless of whether Bulletin 09–02 establishes a binding norm, the procedures outlined therein are expressly authorized by existing regulations. We disagree. Although the regulation at 55 Pa.Code § 3170.84(a) authorizes the Department to set maximum reimbursement levels by "directive"[9] or "memorandum," that section does not authorize the Department to condition such reimbursement on the providers' submission of detailed cost data. Moreover, while 55 Pa.Code § 3170.106(a) permits the Department to review and audit "records," it does not authorize the Department to condition funding for children and youth services contracts on the providers' prior submission of expenditure data and completion of prescribed forms. Thus, because the Department's interpretation of these regulations is inconsistent with their plain language, the Department's reliance on them is unfounded. *See Tire Jockey Service, Inc. v. Department of Environmental Protection,* 591 Pa. 73, 107–08 & n. 20, 915 A.2d 1165, 1186 & n. 20 (2007).

After reviewing the eighty-seven-page Bulletin in its entirety, we are compelled to conclude that the Department intended Bulletin 09–02 to be mandatory and binding on County Agencies and providers of out-of-home placement services. The terms of the Bulletin are neither "guidelines" nor statements of the Department's future intent; rather, they unambiguously mandate that County Agencies and providers must comply with specific cost reporting procedures in order to receive reimbursement. While it is true that individual counties and providers may choose not to participate in Bulletin 09–02's cost review process, the consequence for failure to do so is that they will receive no reimbursement from the Department.

Based on this analysis, we hold that the Bulletins are, in fact, unpromulgated regulations and, thus, Providers have a clear right to the relief requested.[10] Accordingly, we grant Providers' Motion.

## ORDER

AND NOW, this 23rd day of July, 2010, we hereby grant the Motion for Summary Relief filed by Northwestern Youth Services, Inc., Adelphoi Village, Appalachian Youth Services, Inc., Hermitage House Youth Services, Inc., Pyramid Healthcare, Inc., and Tabor Children's Services.

---

9. We also point out that "directive" is not defined in the regulation, and the only directives we have found in our research are management directives, which our court has described as "tool[s] for managing people in the executive branch of state government." *Cutler v. State Civil Service Commission (Office of Administration),* 924 A.2d 706, 711 (Pa.Cmwlth.), *appeal denied,* 596 Pa. 710, 940 A.2d 366 (2007). That is not the type of document at issue here. Consequently, we are unconvinced by the Department's attempt to classify Bulletin 09–02 as a directive.

10. The Department relies on *Bedford* in asserting that there are disputed issues of fact that preclude the grant of summary relief in this case. In *Bedford,* various municipalities that operated wastewater and sewage treatment plants filed a petition for review challenging a Compliance Plan issued by the Department of Environmental Protection (DEP). The municipalities argued that the Plan was invalid as an unpromulgated regulation. DEP filed a motion for summary relief. This court denied the motion, concluding that the issue of whether the Plan was a regulation or a statement of policy could not be determined by reviewing its component documents alone. *Bedford,* 972 A.2d at 60–61, 68. We held that further discovery was needed on the issue of how the Plan actually functioned. *Id.* at 67–68. *Bedford,* however, is distinguishable from this case because, here, the issue of whether Bulletin 09–02 actually functions as a regulation can be determined based on a review of the document itself.