IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Bret Dunkelberger,             :
            Petitioner   :
                        :
      v.                :    No. 1236 C.D. 2024
                        :    Argued: December 8, 2025
Department of Human Services,   :
            Respondent :

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
              HONORABLE MICHAEL H. WOJCIK, Judge (P.)
              HONORABLE MARY HANNAH LEAVITT, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY SENIOR JUDGE LEAVITT         FILED: February 17, 2026

Bret Dunkelberger (Dunkelberger) petitions for review of an adjudication of the Department of Human Services (Department) that denied his request for an exception from certain Department rules relating to the home and community-based services he receives. In doing so, the Department affirmed the decision of the Administrative Law Judge (ALJ) that because the challenged rules were established by regulation, the ALJ lacked authority to invalidate or modify them as requested. On appeal, Dunkelberger argues, *inter alia*, that the rules in question were not lawfully promulgated as regulations and, thus, are null and void. Upon review, we reverse the Department's adjudication.

**Background**
**I. Medicaid and Waiver Programs**

Medicaid is the nation's primary health insurance program for low-income and high-need Americans. Enacted in 1965 and set forth at Title XIX of the Social Security Act, *see* 42 U.S.C. §§1396–1396w-6, Medicaid is jointly funded by

the federal and state governments. Participation in Medicaid is optional, but once a state elects to participate, it must comply with Title XIX and its regulations. *See Rehabilitation and Community Providers Association v. Department of Human Services Office of Developmental Programs*, 283 A.3d 260, 262 (Pa. 2022). Medicaid is administered at the federal level by the Centers for Medicare & Medicaid Services ("CMS"), which is part of the United States Department of Health and Human Services. In Pennsylvania, Medicaid is administered by the Department and is known as Medical Assistance.

The federal government requires states participating in Medicaid to provide certain mandated services to Medicaid enrollees. The federal government also authorizes waiver programs, which give states flexibility to operate outside federal rules. Waivers must be approved by CMS. *Rehabilitation and Community Providers Association*, 283 A.3d at 262.

One category of waivers, authorized by Section 1915(c) of the Social Security Act, 42 U.S.C. §1396n, is known as Home and Community-Based Services and relates to long-term care. This waiver permits enrollees to receive care in their home or community rather than in an institutional setting. *Rehabilitation and Community Providers Association*, 283 A.3d at 262-63.

The Department's Office of Developmental Programs is responsible for funding and supervising the provision of services associated with Home and Community-Based Services waivers.

## II. Factual Background

Dunkelberger suffers from several medical conditions and behavioral disorders, including severe autism, that require significant care. Currently 32 years old, he resides with his mother Kathleen Dunkelberger (Mother), and he receives

care through the Home and Community-Based Services waiver program. Mother is a direct service provider and has formed a corporation, "Bret's Adventure," which has been approved by Northumberland County Behavioral Health/Intellectual & Developmental Services (County Services) to provide care to Dunkelberger. Mother is an officer, and the only full-time employee, of Bret's Adventure.

An individual support plan (Support Plan) has been developed to address Dunkelberger's needs, which has been in effect since 2017. The Support Plan is annually reassessed, updated, and approved by the Northumberland County Administrative Entity (Administrative Entity), an agent of the Department's Office of Developmental Programs. The Support Plan has prescribed Dunkelberger approximately 98 hours of Home and Community-Based Services per week, or 14 hours per day.

In October 2019, Tara Avellino (Avellino), a program specialist for County Services, advised Mother by email that she cannot be compensated for more than 40 hours of care per week. In addition, compensation for services rendered to Dunkelberger outside the Commonwealth while on vacation was capped at 30 days per year. Further, when relatives provide services to Dunkelberger, the combination of their hours cannot exceed 60 hours in any given week. Avellino advised that this rule, known as "the "40/60 rule," "is very concrete and not subject to any interpretation and must be followed to the letter." Reproduced Record at 35a (R.R. __).

On October 22, 2019, Dunkelberger sought an exception to the 40/60 rule and the travel rule. By letter of October 30, 2019, the Office of Developmental Programs, by Deputy Secretary Kristen Ahrens, denied the request for the stated reason that an exception to the 40/60 rule exists only when there is an emergency or

an unplanned departure of a regularly scheduled worker, which Dunkelberger did not prove. As to the travel rule, the letter stated that it "has been in effect since July 1, 2009, and is not subject to a variance or exception process." R.R. 10a.

Dunkelberger appealed the rulings of Deputy Secretary Ahrens to the Department's Bureau of Hearings and Appeals (Bureau of Appeals). The appeal alleged that the imposition of the "40/60 rule," the travel rule, and limitation on family providers would limit his "current services and remove [his] choices." Certified Record at 9 (C.R. __). Dunkelberger requested to be "grandfather[ed] in so [he] can continue [his] everyday life [and] services and/or remove these discriminatory reg[ulations] all together." *Id*. The Bureau of Appeals appointed an ALJ to conduct a hearing.

At the hearing, Mother testified that her son, who has been receiving waiver services since age 3, requires 24-hour care. Because the two reside in a rural area, it is hard to secure and retain care providers. Bret's Adventure has hired staff from time to time, but no one has lasted very long. Mother is a registered nurse and testified that she is best suited to provide care to her son, who has thrived under her care.

Mother testified that Dunkelberger has been approved for 12 and 14 hours of care per day and has been for many years. She first learned of the 40/60 rule in 2019 when she was contacted by Avellino. Mother requested copies of the 40/60 rule and travel rule, which Avellino provided. Mother then contacted Deputy Secretary Ahrens to request an exception; her request was denied. Mother testified that the rules will reduce her son's care. She is the only person who can care for her son because other caregivers are not available in her area, which is rural.

Eileen Holobovich, Dunkelberger's County-assigned support coordinator, who monitors his care on a monthly basis, testified that should Dunkelberger be placed in a community home, he would likely receive 24 hours of care a day, 7 days a week, from 2 staff members, which is more than the hours of care approved for Dunkelberger's Support Plan. Notes of Testimony at 150-51, (N.T. __); C.R. 455-56. Holobovich testified that an institutional placement is not ideal for Dunkelberger because changing his routine could be "devastating" for him. N.T. 151; C.R. 456. Further, such a placement would not provide "the activities, the availability to go out when he needs to[,]" which he presently receives. *Id*.

Avellino testified about the Department rules challenged by Dunkelberger. She explained that the 40/60 rule has been in effect, in one form or another, since 2015 or before. The rule is set forth in Section 15 of the Individual Support Plan Manual (Support Plan Manual), which was adopted by the Office of Developmental Programs to provide guidance to service providers, such as Bret's Adventure. The 30-day (now 90-day) travel rule is set forth in Section 16 of the Support Plan Manual. These rules are also referenced in Appendix C of the waiver agreement that the Department entered into with the federal government (Waiver Agreement), which authorizes waiver services in the Commonwealth. Avellino testified that the current versions of the 40/60 rule and the travel rule took effect in May 2024 and were published by the Department's Office of Developmental Programs in Bulletin No. 00-22-05. N.T. 12-13; C.R. 317-18. *See also* R.R. 2a-6a. Avellino stated that the 40/60 rule does not limit the hours of care that can be provided to a recipient but only the hours for which a relative caregiver can be paid for providing in-home services.

5

Avellino testified that the travel rule permits a recipient to receive care while travelling. Formerly, the travel policy permitted services for 30 days and only in a contiguous state, such as Maryland and New York. The policy has since been amended to allow for 90 days of services while travelling, without regard to the location of the travel.

A copy of the two rules was admitted into evidence. The 40/60 rule is set forth in Bulletin No. 00-22-05, Attachment 1 (Support Plan Manual), which states, in part, as follows:

> *Guidance* Regarding Limits on the Number of Hours of In-Home and Community Support and Companion by Relatives and Legal Guardians
>
> *Any one relative or legal guardian may provide a maximum of 40 hours per week of authorized In-Home and Community Support and/or Companion (when both services are authorized in the [Support Manual]). If a combination of both services occurs, the relative or legal guardian may only render 40 hours total between the two services. Further, when more than one relative or legal guardian provide the service(s), each individual may receive no more than 60 hours per week of authorized In-Home and Community Support, Companion or a combination of In-Home and Community Support and Companion (when both services are authorized in the [Support Manual] from all relatives and legal guardians.*
>
> *An exception may be made to the limitation on the number of hours of In-Home and Community Support and Companion provided by relatives or legal guardians at the discretion of the employer when there is an emergency or an unplanned departure of a regularly scheduled worker for up to 90 calendar days in any fiscal year.*
>
> All individuals are required to have a back-up plan to address situations when a paid relative or legal guardian does not report to work. [Office of Developmental Programs] recognizes, however, that there may be extenuating circumstances that

cannot be addressed through the plan. In general, these situations include, but are not necessarily limited to:

- Unexpected circumstances such as inclement weather, sudden illness, or the unplanned extension of medical leave, that prevent a regularly scheduled worker from arriving at the job site and where another worker/caregiver is not immediately available to work;

- Situations where a worker unexpectedly quits or is terminated from employment such that relatives and legal guardians must perform paid work in excess of the 40/60 limitation.

- or

- The sudden loss of a caregiver who kept the provision of paid services by relatives and legal guardians at or below 40/60 hours per week.

Bulletin No. 00-22-05, Attachment 1; R.R. 3a-4a (emphasis added).

The travel rule in Section 16 of the Support Plan Manual states, in part, as follows:

Temporary travel is defined as a day in which the individual visits another destination that is away from the individual's primary residence or community. A day includes staying away from home for at least one overnight. A day is when the individual is traveling, and waiver services are rendered and reimbursed. Examples of temporary travel could include: an overnight away from home, a full week (7 days) vacation, or other extended time away from the individual's home.

The following services may occur during temporary travel (as defined below):

- In-Home and Community Support
- Residential Habilitation (licensed and unlicensed)
- Life Sharing (licensed and unlicensed)
- Supported Living
- Shift Nursing
- Supports Coordination

7

- Specialized Supplies
- Supports Broker
- Behavioral Support
- Companion
- Respite

These services may be provided anywhere during temporary travel. The only exception is Respite Camp which can only be provided in Pennsylvania, Washington DC, Virginia or a state contiguous to Pennsylvania.

. . . .

The following conditions apply during travel:

- *The provision of waiver services during travel is limited to no more than 90 calendar days per individual's [Support Plan] plan year.*

Bulletin No. 00-22-05, Attachment 1; R.R. 5a (emphasis added).

## Department Adjudication

The ALJ credited Mother's and Avellino's testimony. The ALJ found, as fact, that Dunkelberger was approved to receive "14 hours per day" of companion services and in-home and community support services, and that these services are provided by Mother through Bret's Adventure. ALJ Decision at 15. The ALJ found that "[o]n an undetermined date," Mother was advised that the 40/60 rule and the travel policy applied to Bret's Adventure. *Id*.

Reasoning that the Department has the statutory authority to adopt rules and regulations, the ALJ concluded that the Department did not err in denying Dunkelberger's request for an exception to the 40/60 rule and the travel rule. Appendix C of the Waiver Agreement and Section 15 of the Support Plan Manual authorize exceptions only where there is an emergency or an unplanned departure of a regularly scheduled worker. Further, the exception is capped at 90 days in a fiscal year. Mother offered no testimony to show an emergency or departure of a worker

8

that would allow an exception to the 40/60 rule. The ALJ rejected Mother's claim that the rule would adversely affect Dunkelberger's care, reasoning that the rule does not limit the amount of services but only who can be paid for providing such services. ALJ Decision at 16. As to the 90-day travel rule, no exceptions are permitted in the policy.

The ALJ concluded that he lacked authority "to change, alter or determine the validity of the 40/60 [r]ule or the travel policy, which is a part of departmental regulations," or to make exceptions to such rules. ALJ Decision at 16. Rather, the 40/60 rule and the travel policy must be strictly followed. *Id*.

By order of August 20, 2024, the Department affirmed the ALJ's decision, making it a final adjudication. Dunkelberger then petitioned for this Court's review of the Department's adjudication.

## Appeal

On appeal,[1] Dunkelberger raises 10 questions for our review, which we consolidate into 4 for clarity.[2] First, Dunkelberger argues that the ALJ (and the

---

[1] This Court's review determines "whether legal error has been committed, whether constitutional rights have been violated, or whether the necessary findings of fact are supported by substantial evidence." *T.H. v. Department of Human Services*, 145 A.3d 1191, 1196 n.6 (Pa. Cmwlth. 2016).

[2] These 10 questions are:

> 1. Whether the [Office of Developmental Programs] policies, which [the Office of Developmental Programs] adopted unilaterally as "policies" without following formal rulemaking procedures, constitute "binding norms" and therefore constitute unenforceable, unpromulgated regulations.
>
> 2. [The Bureau of Appeals'] refusal to rule upon [Dunkelberger's] challenge to the [Office of Developmental Programs] Policies as unpromulgated regulations directly contradicts well-established Pennsylvania Law.
>
> 3. Whether [the Bureau of Appeals] committed an error of law by concluding that the [Office of Developmental Programs] Policies, which appear nowhere in the Pennsylvania Code, are "a part of departmental regulations."

9

Bureau of Appeals) erred by treating the 40/60 rule and the travel rule as regulations with the force and effect of law. To the contrary, these rules were not lawfully promulgated as regulations and, thus, are null and void. Second, Dunkelberger argues that assuming the 40/60 rule and the travel rule are valid, the Department erred by not considering his request for an exception to these rules. Third, Dunkelberger argues that the 40/60 rule and the travel rule violated the Department's duly promulgated regulations on Home and Community-Based Services as well as

---

4. Whether [the Bureau of Appeals] committed an error of law by failing to grant, or even consider, [Dunkelberger's] request for a waiver from applicability of the [Office of Developmental Programs] Policies.

5. Whether the [Office of Developmental Programs] Policies violate (i) [the Department's] own existing regulations governing [Home and Community-Based Services] at 55 Pa. Code Chapter 6100, (ii) state and federal law applicable to the Medicaid Program; and (iii) the government mandates under the Mental Health and Intellectual Disability Act of 1966.[ ]

6. Whether [Office of Developmental Programs'] rigid application of the [Office of Developmental Programs] Policies to [Dunkelberger's] services without an accommodation constitute unlawful disability discrimination and violates the *Olmstead* [*v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999),] "integration mandate" and related federal law.

7. Whether[] [the Department] violated applicable law by failing to schedule a hearing on [Dunkelberger's] Fair Hearing Appeal for over four years.

8. Whether [the Bureau of Appeals] committed an error of law, denying [Dunkelberger's] Fair Hearing rights, by failing and refusing to issue subpoenas he requested and repeatedly scheduling his hearing without allowing reasonable time for such subpoenas to be served.

9. Whether [the Bureau of Appeals] committed additional errors that denied [Dunkelberger] his legally protected right as part of his Fair Hearing Appeal.

10. Whether actions of [the Department], including without limitation as part of the admitrative adjudicative proceeding conducted before the [Bureau of Appeals], constituted or included any violations of [Dunkelberger's] rights of due process under the United States or Pennsylvania constitutions.

Dunkelberger Brief at 3-4.

state and federal law.  Finally, Dunkelberger argues that the hearing did not comply with procedural due process.

## I. Unpromulgated Regulation

In his first issue, Dunkelberger argues that the ALJ erred in refusing to consider his contention that the 40/60 rule and the travel rule were not duly promulgated as regulations and, thus, invalid.  First, the 40/60 rule and the travel rule are not "a part of departmental regulation," as the ALJ reasoned, because they do not appear anywhere in the Pennsylvania Code.  *See* ALJ Decision at 16.  Second, the ALJ had authority to consider and determine whether a Department policy constitutes an unpromulgated regulation under the precedent of *Manor v. Department of Public Welfare*, 796 A.2d 1020 (Pa. Cmwlth. 2002).  The ALJ's claim of limited authority directly contradicts the position asserted by the Department in *Rehabilitation and Community Providers Association*, 283 A.3d 260.  There, the Supreme Court agreed with the Department that the providers had to exhaust an available administrative remedy to challenge a provider fee schedule on the theory that it was an unpromulgated and invalid regulation.

Dunkelberger argues that the 40/60 rule and the travel rule constitute "binding norms."  As such, they had to be promulgated in accordance with the procedures in the Commonwealth Documents Law,[3] the Regulatory Review Act,[4] and the Commonwealth Attorneys Act,[5] in order to have effect.  An agency's adoption of a "binding norm" without adhering to the above-listed procedures

---

[3] Act of July 31, 1968, P.L. 769, *as amended*, 45 P.S. §§1102-1208, 1602, and 45 Pa. C.S. §§501-907.

[4] Act of June 25, 1982, P.L. 633, *as amended*, 71 P.S. §§745.1.-745.14.

[5] Act of October 15, 1980, P.L. 950, *as amended*, 71 P.S. §§732-101-732-506.

11

renders the binding norm void and unenforceable. Dunkelberger Brief at 30 (citing *Manor*, 796 A.2d 1020).

Dunkelberger argues that the 40/60 rule and the travel rule meet the "binding norm" standard because they are mandatory. Dunkelberger Brief at 31. Avellino advised Mother that the 40/60 rule "is very concrete and not subject to any interpretation and must be followed to the letter." R.R. 35a. The ALJ likewise held that "[t]he limitation of the service hours that can be billed by a defined relative under the 40/60 Rule and the travel policy with regard to In-Home and Community Support and Companion services is a part of departmental regulation *that must be followed*." ALJ Decision at 16 (emphasis added).

In response, the Department acknowledges that the ALJ erred in holding that the 40/60 rule and the travel rule were regulations. It also acknowledges that the ALJ had the authority to determine whether the challenged Department rules were, in actuality, unpromulgated regulations. Department Brief at 14 n.3. The Department argues, however, that the 40/60 rule and the travel rule are "interpretative rules" and, as such, exempt from notice-and-comment rulemaking and regulatory-review requirements. Department Brief at 13. The rules are not "binding norms" because they are not "a pronouncement of the agency" but, rather, derived from the Waiver Agreement between the Commonwealth and the federal government, which "is not binding except between the parties." Department Brief at 11-12. In their agreement with the Commonwealth, service providers agree to comply with the terms in the Waiver Agreement. Further, under the Waiver Agreement, "the State has broad discretion to design its waiver program to address the needs of the waivers target population[.]" Department Brief at 12 (citing Waiver Agreement, Appendix A, at 6-7).

12

In *Borough of Bedford v. Department of Environmental Protection*, 972 A.2d 53 (Pa. Cmwlth. 2009), this Court explained the difference between a regulation and a statement of policy,[6] as follows:

> Case law has established that a regulation has the force and effect of law. [] The same is not true of a statement of policy, which expresses, at most, an agency's interpretation of law, as that law is expressed in a statute or a regulation. *Accordingly, a person may be charged with a violation of a statute or regulation, but not with a violation of a statement of policy. It is always the agency's burden to convince the tribunal that its interpretation of the statute or regulation it seeks to enforce is correct, whether or not that interpretation has ever been promulgated in a statement of policy.*
>
> Although a regulation and statement of policy are each "promulgated" by an agency, the method of promulgation differs. An agency's promulgation of a regulation is subject to the procedural requirements of the Commonwealth Documents Law, and other statutes, but there are no such requirements for a statement of policy. [] *The value of a statement of policy is that it communicates, in advance of a discrete agency action, how the agency interprets a law and intends to give it effect.* A statement of policy can be published in the Pennsylvania Code, but

---

[6] Section 102(12) of the Commonwealth Documents Law defines a "regulation" as

> any rule or regulation, or order in the nature of a rule or regulation, promulgated by an agency under statutory authority in the administration of any statute administered by or relating to the agency, or prescribing the practice or procedure before such agency.

45 P.S. §1102(12). It defines a "statement of policy" as

> any document, except an adjudication or a regulation, promulgated by an agency which sets forth substantive or procedural personal or property rights, privileges, immunities, duties, liabilities or obligations of the public or any part thereof, and includes, without limiting the generality of the foregoing, any document interpreting or implementing any act of Assembly enforced or administered by such agency.

Section 102(13) of the Commonwealth Documents Law, 45 P.S. §1102(13). The definitions are circular in logic and not that helpful.

13

publication is not required; by contrast, a regulation must be published in the Pennsylvania Code. []

The basic procedures by which an agency promulgates a regulation are set forth in the Commonwealth Documents Law. In essence, these procedures require an agency to give notice to the public of its proposed rule-making and an opportunity for the public to comment.[] [] However, this is only the beginning. The agency must also obtain the approval of the Attorney General and the General Counsel of a proposed regulation's form and legality. [] Finally, an agency's regulation must also undergo legislative scrutiny in accordance with the Regulatory Review Act. []

. . . .

*The effect of an agency's failure to promulgate a regulation in accordance with these various statutory requirements is to have the regulation declared a nullity.* [] It is little wonder that agencies take the statement of policy route, which is free of the burdens imposed upon an agency's promulgation of a regulation. *However, if a statement of policy is actually an unpublished regulation in disguise, it will be nullified due to the agency's failure to obey the processes applicable to a regulation.* Thus, courts must distinguish between the two types of agency promulgations.

*Id*. at 61-63 (emphasis added) (citations and footnotes omitted).

In short, a regulation has the effect of a "binding norm," and a statement of policy does not. *Pennsylvania Human Relations Commission v. Norristown Area School District*, 374 A.2d 671, 679 (Pa. 1977) (*Norristown Area School District*). To determine whether an agency's rule constitutes a binding norm, we consider: (1) the plain language of the rule; (2) the manner in which the agency implements it; and (3) whether it restricts the agency's discretion. *Northwestern Youth Services, Inc. v. Department of Public Welfare*, 1 A.3d 988, 993 (Pa. Cmwlth. 2010), *aff'd*, 66 A.3d 301 (Pa. 2013).

14

"A regulation is a governmental agency's exercise of delegated legislative power to create a mandatory standard of behavior." *Central Dauphin School District v. Department of Education*, 608 A.2d 576, 580 (Pa. Cmwlth. 1992). By contrast, "a statement of policy is a governmental agency's statutory interpretation which a court may accept or reject depending upon how accurately the agency's interpretation reflects the meaning of the statute." *Id.* at 581. "When the agency applies the policy in a particular situation, it must be prepared to support the policy just as if the policy statement had never been issued." *Norristown Area School District*, 374 A.2d at 679 (quoting *Pacific Gas and Electric Company v. Federal Power Commission*, 506 F.2d 33, 38 (D.C. Cir. 1974)). The determination of whether an agency's statement of policy is actually an unpromulgated regulation is a question of law. *Borough of Bedford*, 972 A.2d at 63.

In *Norristown Area School District*, the Pennsylvania Supreme Court considered whether a school desegregation plan (Plan) adopted by the Pennsylvania Human Relations Commission (Commission) constituted a regulation that had not been lawfully promulgated in accordance with the Commonwealth Documents Law. The Commission concluded that the Norristown Area School District violated Section 5(i)(1) of the Pennsylvania Human Relations Act, Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. §955(i)(1), by application of the definition of a "segregated school" set forth in the Commission's Plan. The Supreme Court concluded that the Plan was not a "binding norm" subject to the rulemaking procedures in the Commonwealth Documents Law because it did not "lay down hard and fast standards with which districts must comply in order to conform to the law. It merely pose[d] questions concerning the plan for integration as means of testing the plan's chances of proving acceptable to the Commission." *Norristown Area*

15

*School District*, 374 A.2d at 678.  In adopting the Plan, the Commission had "not departed from its case-by-case approach to racial imbalance in schools, but ha[d] merely formulated general policy statements and made recommendations to aid school districts in developing plans which the Commission will find acceptable." *Id*.

In *Department of Environmental Resources v. Rushton Mining Company*, 591 A.2d 1168 (Pa. Cmwlth. 1991) (*Rushton Mining Company*), a coal mining company challenged the conditions imposed by the Department of Environmental Resources (DER) upon its mining permit.  This Court determined that the permit conditions, which the DER claimed were policy statements, were, in actuality, regulations because "via their standard conditions, the DER sets forth a comprehensive system regarding mining operations which provides conditions precedent in order to mine coal in Pennsylvania.  These conditions, covering the areas of subsidence control, mapping requirements and reporting requirements, have a significant impact on the [c]oal [m]ine [o]perators." *Id*. at 1173.

In *Manor*, 796 A.2d 1020, a nursing home appealed a denial of its request to expand its number of Medical Assistance beds.  The nursing home challenged the Department's statement of policy, arguing that it would terminate reimbursement to nursing facility providers that expanded their existing Medical-Assistance-certified bed capacity.  The policy also advised that exceptions would be considered on a case-by-case basis when the provider demonstrated that an increase in the number of certified beds was in the Department's best interest.

This Court vacated the adjudication and remanded the matter for further proceedings.  In doing so, we noted that in denying the nursing home's request, the ALJ did not examine the validity of the Department's policy, which was at the heart of the case.  The ALJ was held "competent to resolve such issues of whether the

16

agency's own statement of policy is in compliance with state and federal enabling legislation and whether the [policy] is an unpromulgated regulation." *Manor*, 796 A.2d at 1030. The ALJ erred in precluding the nursing home from addressing the issue of the validity of the policy or presenting any evidence on this issue. Nevertheless, the ALJ concluded that the policy was not a "binding norm" subject to the rulemaking process. We held that the hearing officer erred in not affording the nursing home an opportunity to be heard on whether the statement of policy was valid.

More recently, in *Northwestern Youth Services, Inc.*, 1 A.3d 988, providers of residential services, which had contracted with county children and youth services, sought to invalidate an administrative bulletin issued by the Department[7] and by the Department's Office of Children, Youth and Families, governing their reimbursement. The Department asserted that the administrative bulletin at issue merely implemented the audit and reimbursement procedures set forth in its existing regulations. This Court rejected those arguments.

This Court held that the Department's bulletin was an unpromulgated regulation and, as such, invalid. Although the Department characterized the rule as a guideline, the plain language of the bulletin was "mandatory [and] restrictive[,]" which is "indicative of a regulation." *Northwestern Youth Services, Inc.*, 1 A.3d at 993. For example, the bulletin precluded the Department from granting funds to a county agency if a provider failed to comply with its specific cost-reporting requirements. *Id*. at 994-95. In addition, the bulletin did not announce the Department's future intent but, rather, imposed cost-reporting requirements with a

---

[7] By Act of September 24, 2014, P.L. 2458, the Department of Welfare was renamed to the Department of Human Services.

17

retroactive effect. *Id*. at 995. Finally, the language of the bulletin indicated that the Department had "no discretion to deviate from its terms." *Id*. In sum, the Department's bulletin effected "a binding norm," that was subject to the rulemaking process mandated by the Commonwealth Documents Law. *Id*. at 993.

On further appeal, the Supreme Court affirmed. It concluded that "although occasionally referring to its bulletin in terms applicable to statements of policy, [the Department] does not convincingly deny that there is an attendant, binding effect." *Northwestern Youth Services, Inc.*, 66 A.3d at 315. The Supreme Court did not read the Department's duly promulgated regulations on audit procedures as broad enough "to subsume a specialized, affirmative, and extensive cost-reporting requirement." *Id*. The Court observed that, for interpretive rules, "the weaker the link between the interpretation and the text of the statute or regulation being interpreted, the less likely a court is to allow the agency to announce the interpretation by guidance document." *Id*. at 315-16 (quoting Mark Seidenfeld, *Substituting Substantive for Procedural Review of Guidance Documents*, 90 TEX. L. REV. 331, 360-61 (2011)).

Here, the ALJ stated that he lacked the authority "to change, alter or determine the validity of the 40/60 [r]ule or the travel policy, which is a part of departmental regulations," or make exceptions to such rules. ALJ Decision at 16. The Department does not agree with this statement of the ALJ. Rather, it contends that the 40/60 rule and the travel rule are "interpretative rules." Department Brief at 13. However, the Department has not identified the state or federal statute or regulation that the 40/60 rule and the travel rule "interpret." The Department explains that the rules have their origin in the Waiver Agreement, the terms of which home and community-based service providers have agreed to follow. However, the

18

agreement between the Department and Bret's Adventure is not included in the record. In any case, the Waiver Agreement must also be based on federal or state statutes, which have not been identified by the Department.

The record suggests that the 40/60 rule and the travel rule are "binding norms." Avellino advised Mother that the 40/60 rule and the travel rule are "very concrete and not subject to any interpretation and must be followed to the letter." R.R. 35a. Deputy Secretary Ahrens denied Dunkelberger's exception request for the stated reason that he did not present evidence to satisfy the narrow exception to the 40/60 rule, *i.e.*, an emergency. She further stated that the travel rule "is not subject to a variance or exception process." R.R. 10a.

Avellino testified before the ALJ that these rules are set forth in Sections 15 and 16 of the Department's Support Plan Manual, as published in Bulletin No. 00-22-05 and Appendix C of the Waiver Agreement. Similar to the administrative bulletin challenged in *Northwestern Youth Services*, Bulletin No. 00-22-05 was published by the Department's Office of Developmental Programs. Bulletin No. 00-22-05 states that its purpose "is to *provide* the Office of Developmental Programs' [] *requirements and standardized processes* for preparing, completing, documenting, implementing, and monitoring Individual Support Plans[.]" *See* Bulletin No. 00-22-05, at 1, available at https://www.pa.gov/content/dam/copapwp-pagov/en/dhs/documents/docs/documents/odp/ODP%20Bulletin%2000-22-05%20Individual%20Support%20Plans.pdf (last visited February 13, 2026) (emphasis added). In other words, the language of Bulletin No. 00-22-05 appears "mandatory [and] restrictive," which is "indicative of a regulation." *Northwestern Youth Services, Inc.*, 1 A.3d at 993. Bulletin No. 00-22-05 does not itself announce

19

the 40/60 rule or the travel rule; rather, these rules are embedded in Attachment 1 to that bulletin. *See* Bulletin No. 00-22-05, at 5.

The ALJ found that Dunkelberger's Support Plan prescribed him approximately 98 hours of Home and Community-Based Services per week, or 14 hours per day, and then, "[o]n an undetermined date," Mother was advised that the 40/60 rule and the travel policy applied to Bret's Adventure. ALJ Decision at 15. This suggests that Bulletin No. 00-22-05 did not announce the Department's future intent; rather, it imposed the 40/60 rule and the travel rule that were intended to take retroactive effect, which is also indicative of a "binding norm." *Northwestern Youth Services, Inc.*, 1 A.3d at 995.

Without specifically addressing Dunkelberger's challenge to the rules as adversely affecting Dunkelberger's care, the ALJ held that the rules "must be followed," which also supports the conclusion that the 40/60 rule and the travel rule are mandatory and binding. ALJ Decision at 16. As such, they are akin to the permit conditions that the DER imposed on coal mining permittees in *Rushton Mining Company*, 591 A.2d 1168, and the reimbursement and cost-reporting requirements that the Department imposed on private providers of out-of-home residential placement services in *Northwestern Youth Services, Inc.*, 1 A.3d 988.

The Department bears the burden "to convince the tribunal that its interpretation of the statute or regulation it seeks to enforce is correct[.]" *Borough of Bedford*, 972 A.2d at 61. The Department has not met this burden because it has not identified the statute or regulation that has been interpreted in the 40/60 rule and

20

the travel rule. As such, we hold that the 40/60 rule and the travel rule constitute unpromulgated regulations and, thus, are null and void.[8]

## II. Procedural Errors

Dunkelberger argues that the ALJ committed several procedural errors that require a reversal of the Department's adjudication. First, the Department did not schedule a timely hearing. The regulation requires appeals to be scheduled within 3 working days and decided within 90 days. 55 Pa. Code §275.4. Dunkelberger filed his appeal on October 24, 2019, but he did not receive the notice of hearing until March 5, 2024. Second, the ALJ did not rule upon his multiple requests for subpoenas. Third, the ALJ improperly considered materials that were not offered into evidence, such as the "Application for 1915(c) [Home and Community-Based Service] Waiver." ALJ Decision at 5-6. Fourth, the ALJ erred in holding that Dunkelberger waived his challenge to the requirement that relatives or legal guardians can only provide services that consist of companionship, life sharing, supported employment, shift nursing, and transportation (the "limited service rule"). Dunkelberger raised and addressed this issue in his brief filed with the Department.

The Department counters that Dunkelberger received a timely hearing. The regulation at 55 Pa. Code §275.4(a) requires an appeal to be forwarded to the

---

[8] In light of this holding, we need not reach Dunkelberger's second and third issues as to whether the Department erred by not considering his request for an exception to the 40/60 rule and the travel rule and whether these rules violated the state and federal law and regulations on Home and Community-Based Services. The Home and Community-Based Services prescribed in Dunkelberger's Support Plan are subject to an on-going review by the Department. The annual Support Plan review provides the Department the opportunity to revise his plan, including the hours of care that can be provided to Dunkelberger by a relative. Any appeal can be the vehicle for establishing what state and federal statutes or regulations provide on the 40/60 rule and the travel rule.

Bureau of Appeals within three working days of the date of appeal's receipt. It does not require that a hearing be scheduled within three days. In any event, Dunkelberger was not prejudiced by any so-called delay because the 40/60 rule was suspended as a result of the COVID-19 pandemic. The Office of Developmental Programs ended the suspension of the 40/60 rule and the travel rule in November 2023, and the Bureau of Appeals scheduled the hearing in March 2024. As to Dunkelberger's claim that the ALJ failed to rule on his requests for subpoenas, the Department argues that Dunkelberger did not raise this issue at the hearing and, therefore, has failed to preserve it for appeal. In response to Dunkelberger's argument that the Bureau of Appeals improperly considered materials that were not offered into evidence, such as the "Application for 1915(c) [Home and Community-Based Service] Waiver," the Department argues that the information contained therein correlates with those in Sections 15 and 16 of the Support Plan Manual as published in Bulletin No. 00-22-05, which was admitted as Exhibit C-1 during the hearing. Further, the ALJ may take notice of public documents; the waiver application is available on the Department's website. Finally, the Department contends that the ALJ properly determined that Dunkelberger waived his claim on the limited service rule. At the prehearing conference, the parties limited the appeal to the 40/60 rule and the travel rule. *See* ALJ Decision at 3 n.1. That Dunkelberger raised the issue of the limited service rule in his brief to the ALJ is of no moment.

We decline to consider Dunkelberger's claim on the timing of his hearing because this issue was not first raised before the ALJ. "The appellate court may sua sponte refuse to address an issue raised on appeal that was not raised and preserved below[.]" *Siegfried v. Borough of Wilson*, 695 A.2d 892, 894 (Pa.

Cmwlth. 1997) (citation omitted).[9]  Likewise, Dunkelberger did not preserve the issue of the ALJ's failure to rule on his subpoena requests because he did not raise it with the ALJ.  *See Harry v. Unemployment Compensation Board of Review* (Pa. Cmwlth., No. 2197 C.D. 2012, filed June 19, 2013) (unreported),[10] slip op. at 15 (claimant failed to preserve issue for appeal where subpoena sought but not issued before hearing and proceeded with hearing without repeating request for subpoena).  *See also Walsh v. State Civil Service Commission (Department of Transportation)*, 959 A.2d 485, 488 n.3 (Pa. Cmwlth. 2008) (claim involving denial of subpoena was waived because it was not raised before the agency).

We reject Dunkelberger's claim that the Bureau of Appeals improperly considered the "Application for 1915(c) [Home and Community-Based Service] Waiver."  ALJ Decision at 5-6.  The Department, "as an administrative agency, may take official notice of information contained in its own files[.]"  *Wiley v. Pennsylvania Board of Probation and Parole*, 967 A.2d 1060, 1063 (Pa. Cmwlth. 2009) (citing *Taylor v. Pennsylvania Board of Probation and Parole*, 569 A.2d 368, 371 (Pa. Cmwlth. 1989)).  Official notice "authorizes the finder of fact to waive proof of facts that cannot seriously be contested," thereby permitting "an agency to take notice of facts which are obvious and notorious to an expert in the agency's field."  *Harris v. Unemployment Compensation Board of Review*, 247 A.3d 477, 484

---

[9] Even so, the Department regulation does not suggest that a hearing be scheduled within three working days, as Dunkelberger argues.  Rather, Section 275.4(a)(3)(v) of the Department regulation requires that "[a]ppeals to be scheduled for a hearing *must be forwarded to the Office of Hearings and Appeals within 3 working days* from the date the appeal was received and date stamped[.]"  55 Pa. Code §275.4(a)(3)(v) (emphasis added).  Under 55 Pa. Code §275.4(e)(1), "[h]earings will be scheduled to be held *as soon as possible*, allowing at least 10 days notice to be given to the appellant and his representative or a lesser time if requested by the household." (emphasis added).

[10] This unreported opinion is cited as persuasive authority pursuant to this Court's Internal Operating Procedures. 210 Pa. Code §69.414(a).

(Pa. Cmwlth. 2021) (quoting *Ramos v. Pennsylvania Board of Probation and Parole*, 954 A.2d 107, 109-10 (Pa. Cmwlth. 2008)). "Official notice is broader than judicial notice, in that it contemplates the expertise of administrative agencies and recognizes that such agencies are a 'storehouse of information on that field consisting of reports, case files, statistics and other data relevant to its work.'" *Harris*, 247 A.3d at 484 (quoting *Ramos*, 954 A.2d at 110).

Here, the waiver application is posted on the Department's website, *see* https://www.pa.gov/content/dam/copapwp-pagov/en/dhs/documents/services/disabilities-aging/documents/developmental-programs/PFDS-Waiver-Effective-5-1-24.pdf (last visited February 13, 2026). As such, the ALJ may take official notice of the document. Notably, Dunkelberger does not challenge the content of the waiver application. The document merely recites the 40/60 rule and the travel rule and correlates with the information contained in Attachment 1 to Bulletin No. 00-22-05, which was admitted at the ALJ hearing. We conclude that the ALJ properly took official notice of the waiver application.

Finally, we reject Dunkelberger's argument that the ALJ erred in holding that he waived his challenge to the limited service rule. The ALJ stated in his decision that at the prehearing conference, the parties limited the scope of the appeal to the 40/60 rule and the travel rule. ALJ Decision at 3 n.1. The prehearing conference "was held off the record[.]" ALJ Decision at 1. On appeal, Dunkelberger does not dispute that the parties agreed the issues before the ALJ were the denial of exceptions to the 40/60 rule and the travel rule. He argues, rather, that because he also addressed the limited service rule in his brief, the Bureau of Appeals improperly deemed his challenge to this rule waived. Dunkelberger cites no legal authority in support of his claim.

24

For all these reasons, we reject Dunkelberger's procedural challenges to the ALJ hearing.

## Conclusion

The 40/60 rule and the travel rule are enforced by the Department as if they are binding norms. Because they were not promulgated as regulations by the Department in accordance with the procedures required in the Commonwealth Documents Law, the Regulatory Review Act, and the Commonwealth Attorneys Act, they must be considered null and void. We hold that the Department erred in denying Dunkelberger's appeal for the stated reason that the 40/60 rule and the travel rule were duly-promulgated regulations that did not authorize the exception requested by Dunkelberger. We therefore reverse the Department's August 20, 2024, adjudication.

_____

MARY HANNAH LEAVITT, President Judge Emerita

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Bret Dunkelberger,                         :
                    Petitioner      :
                                           :
         v.                          :         No. 1236 C.D. 2024
                                           :
Department of Human Services,       :
                    Respondent  :

# **O R D E R**

AND NOW, this 17th day of February, 2026, the adjudication of the Department of Human Services, dated August 20, 2024, is REVERSED.

_____
MARY HANNAH LEAVITT, President Judge Emerita